[No. S097725. Dec. 12, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL WALKER, Defendant and Appellant.

**COUNSEL**

Susan D. Shors, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Jo Graves, Assistant Attorney General, W. Scott Thorpe, Wayne K. Strumpfer, Janis Shank McLean and Matthew L. Cate, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BAXTER, J.**—In this case, we are asked to determine whether a defendant who is convicted of the felony of willfully failing to appear in court as required while on bail, a violation of section 1320.5 of the Penal Code,[1] is subject, in addition to the sentence that statute prescribes, to a consecutive two-year sentence enhancement under section 12022.1. Section 12022.1 applies generally if a defendant charged with a felony is released on bail, is subsequently arrested for committing a second felony while on bail, and is convicted of both felony offenses. Application of settled rules of statutory construction leads us to conclude that the Legislature intended section 12022.1 to apply where, as here, the only felony the defendant commits while released on bail is a failure to appear in violation of section 1320.5. We further conclude that, because a section 12022.1 sentence enhancement is not based on the same act or omission for which punishment is authorized under section 1320.5, sentencing under both statutes may be imposed without violating section 654's bar against multiple punishment.

### Factual and Procedural Background

The facts relevant to the legal issues presented are undisputed.

In February of 1998, defendant Daniel Walker was charged in case No. 62-344 with three counts of first degree residential burglary (§ 459) and one count of grand theft of a firearm (§ 487, subd. (d)). Defendant was released on bail and ordered to appear in court on April 2, 1998.

Defendant failed to appear in court as required and was charged in case No. 62-2191 with the offense of willful failure to appear in court while released on bail. (§ 1320.5.) The information in case No. 62-2191 also alleged, as a basis for enhancing defendant's sentence under section 12022.1, that defendant committed the failure-to-appear offense while he was released from custody on bail in case No. 62-344. Defendant subsequently was apprehended.

In case No. 62-344, the prosecution successfully moved to amend to add one count of receiving stolen property (§ 496, subd. (a)), and a jury subsequently convicted defendant of all of the burglary, grand theft, and stolen property charges. In case No. 62-2191, defendant pleaded guilty to the failure-to-appear charge and admitted as true the enhancement allegation that he committed that offense while released on bail. As relevant here, defendant's sentence included a term of eight months (one-third the middle

---

[1]Unless otherwise specified, all further statutory references are to this code.

term) for the failure-to-appear offense (§ 1320.5), plus a consecutive sentence of two years for the sentence enhancement (§ 12022.1).

The Court of Appeal, in a split decision, upheld defendant's sentence insofar as it imposed punishment under section 1320.5 and section 12022.1.

We granted defendant's petition for review.

## DISCUSSION

Defendant contends the imposition of enhanced punishment under section 12022.1 is inappropriate for two reasons. As a matter of statutory construction, he argues, section 12022.1 does not apply when a defendant's only on-bail offense is a willful failure to appear in violation of section 1320.5. In any event, he asserts, the imposition of punishment under both sections 1320.5 and 12022.1 violates section 654's prohibition against multiple punishment of an act or omission, i.e., the single act of failing to appear in court while released on bail. We address these contentions in order.

### A. *Legislative Intent*

▮ Does the two-year sentence enhancement provided in section 12022.1 apply when a defendant's only on-bail offense is a willful failure to appear in court as required, in violation of section 1320.5?

In this part of our analysis, we must ascertain what the Legislature intended when it enacted sections 1320.5 and 12022.1. ▮ We begin by examining the words of the respective statutes; if the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs. (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639] (*Allen*); *People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232] (*Coronado*).) If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. (*Ibid.*) In such situations, we strive to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purposes. (*Ibid.*) We will avoid any interpretation that would lead to absurd consequences. (*Ibid.*)

▮ Section 1320.5 defines a substantive criminal offense and the punishment therefor as follows: "Every person who is charged with or convicted of the commission of a felony, who is released from custody on bail, and

who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony. Upon a conviction under this section, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) or by imprisonment in the state prison, or in the county jail for not more than one year, or by both the fine and imprisonment. Willful failure to appear within 14 days of the date assigned for appearance may be found to have been for the purpose of evading the process of the court." As reflected by its terms, section 1320.5 specifies no limitation whatsoever on the circumstances of its operation.

Unlike section 1320.5, section 12022.1 does not define a criminal offense; instead, it identifies circumstances under which a defendant charged with a substantive offense is subject to a sentence enhancement. Specifically, section 12022.1 provides that if a person charged with a felony (the primary offense) is released on bail or on his or her own recognizance and subsequently is arrested for committing another felony (the secondary offense) while released from custody on the primary offense, and if that person is convicted of both offenses, he or she "shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court." (§ 12022.1, subds. (a), (b), (d).)[2]

The language of section 12022.1 provides no exception to its application in the event that the defendant's only secondary offense is a violation of section 1320.5. To the contrary, section 12022.1 is phrased in unqualified terms stating that "[a]*ny person arrested for a secondary offense* which was alleged to have been committed while that person was released from custody on a primary offense *shall be subject to a penalty enhancement* of an additional two years in state prison *which shall be served consecutive to any other term imposed by the court.*" (*Id.*, subd. (b), italics added.) The plain

---

[2]Section 12022.1 provides in pertinent part: "(a) For the purposes of this section only: [¶] (1) 'Primary offense' means a felony offense for which a person has been released from custody on bail or on his or her own recognizance . . . . [¶] (2) 'Secondary offense' means a felony offense alleged to have been committed while the person is released from custody for a primary offense. [¶] (b) Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court. [¶] (c) The enhancement allegation provided in subdivision (b) shall be pleaded in the information or indictment which alleges the secondary offense . . . . [¶] (d) Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense. The stay shall be lifted by the court hearing the primary offense at the time of sentencing for that offense and shall be recorded in the abstract of judgment. If the person is acquitted of the primary offense the stay shall be permanent."

meaning of these terms strongly suggests that the Legislature intended section 12022.1 to apply to secondary felony offenses of any kind without restriction, including violations of section 1320.5. Fairly read, the broad and compulsory nature of the language appears to require courts to impose the two-year enhancement no matter what type of secondary felony offense the defendant commits, so long as the defendant is convicted of both the primary and the secondary offenses. (§ 12022.1, subd. (b); see also *id.*, subds. (a), (d).)

Not only do section 1320.5 and section 12022.1, by their own terms, apply without restriction when their respective statutory requirements are satisfied, but the legislative history confirms that the two provisions serve distinct purposes and authorize punishment for different reasons.

With respect to section 1320.5, the legislative history states explicitly that its purpose is "to deter bail jumping." (Sen. Com. on Judiciary, analysis of Sen. Bill No. 395 (1983-1984 Reg. Sess.) p. 1; Sen. Republican Caucus, analysis of Sen. Bill No. 395 (1983-1984 Reg. Sess.) as amended June 16, 1983, p. 1.) The language and history of section 1320.5 also reflect the Legislature's view that fulfillment of this purpose requires punishment whether or not the defendant ultimately is convicted of the charge for which he or she was out on bail when failing to appear in court as ordered. (§ 1320.5 [every person who is "charged with *or* convicted of" commission of a felony while released from custody on bail is subject to conviction (italics added)]; Assem. Com. on Crim. Law & Pub. Safety, analysis of Sen. Bill No. ₃395 (1983-1984 Reg. Sess.) p. 2 [observing that the proposed legislation would subject a defendant who failed to appear on an underlying felony charge to conviction and sanctions, "even if the defendant was the victim of misidentification or was acquitted on the underlying charge"].)

The legislative history, however, indicates that the purpose of section 12022.1 extends beyond mere deterrence of bail jumping. Notably, one legislative analysis observed that the bill would create another status-based enhancement, somewhat similar to section 667.5's enhancement for prior prison terms, that would not focus on the circumstances of the crime. (Sen. Com. on Judiciary, analysis of Assem. Bill No. 692 (1981-1982 Reg. Sess.) as amended Jan. 25, 1982, p. 5.) Another legislative report observed that those who opposed enactment of the statute did so partly because "no meaningful study of on-bail recidivism has ever been conducted." (Sen. Democratic Caucus, Rep. on 3d Reading of Assem. Bill No. 692 (1981-1982 Reg. Sess.) p. 2.)

As these reports reflect, the Legislature evidently views those who qualify under section 12022.1—defendants convicted of both the primary felony and

the secondary felony—as being particularly deserving of increased punishment for their on-bail recidivism. Indeed, defendants who willfully fail to appear in court as required for felony charges of which they ultimately are convicted are more blameworthy than defendants who willfully fail to appear for felony charges that ultimately are dismissed or reduced, or result in acquittal. Application of both statutes, therefore, leads to the rational result that the more culpable offenders receive the greater punishment. This construction is consistent with our prior recognition that "the purpose and intent behind a section 12022.1 enhancement, generally speaking, is . . . to penalize *recidivist* conduct with increased punishment." (*People v. McClanahan* (1992) 3 Cal.4th 860, 868 [12 Cal.Rptr.2d 719, 838 P.2d 241]; see also *People v. Warinner* (1988) 200 Cal.App.3d 1352, 1356 [247 Cal.Rptr. 197] ["The legislative intent of section 12022.1 was to punish recidivists with additional penalties."].)

The legislative history further indicates that the Legislature was cognizant of an analogous failure-to-appear offense (§ 1320, added by Stats. 1979, ch. 873, § 13, p. 3043 [defining misdemeanor and felony offenses for failure to appear while released on one's own recognizance]) when it enacted section 12022.1 in 1982 (added by Stats. 1982, ch. 1551, § 2, p. 6050).[3] Specifically, an analysis of the bill proposing section 12022.1's enactment commented: "Failure to Appear. Current law provides for criminal sanctions for failure to appear after being released on one's own recognizance or on 10% deposit (for a misdemeanor). Would this bill provide for double punishment for these crimes?" (Assem. Com. on Crim. Justice, analysis of Assem. Bill No. 692 (1981-1982 Reg. Sess.) p. 3.) Although the bill analysis contained no response to this question, the Legislature ultimately selected statutory language that stands unqualified and unrestricted in its application to felony offenses. These circumstances provide yet another basis for inferring that the Legislature did not intend to disallow section 12022.1's application to a failure-to-appear offense.

In urging we should not presume that the Legislature meant what it said when enacting the subject statutes, the dissent cites *In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417] (*Shull*). The dissent contends that *Shull* provides analogous support for interpreting section 12022.1 as being inapplicable when the only secondary offense of which the defendant is convicted is a violation of section 1320.5. The proffered analogy fails to persuade.

In *Shull*, the issue was whether a defendant who was convicted of the crime of assault with a deadly weapon (§ 245) and received a 10-year

---

[3]Section 1320.5 was not enacted until 1983. (Stats. 1983, ch. 403, § 1, pp. 1669-1670 [making it a misdemeanor for a person charged with a felony and released on bail to fail to appear].)

sentence for that offense, also was subject to an additional five- to 10-year sentence under section 3 of the Deadly Weapons Act. (*Shull, supra,* 23 Cal.2d at pp. 747-748.) *Shull* concluded that the Legislature had not intended the additional sentence authorized by the Deadly Weapons Act to apply to a defendant convicted of assault with a deadly weapon. (*Id.* at p. 751.) *Shull* inferred this lack of intent from the fact that the essential factors of the substantive crime[4] and the sentence enhancement were effectively identical and turned solely on the defendant's being armed with a deadly weapon: "[T]he Legislature has fixed the punishment for an assault where a deadly weapon is used, a particular crime, and it is not to be supposed that for the same offense without any additional factor existing the added punishment should be imposed." (*Shull, supra,* 23 Cal.2d at p. 751.) Accordingly, *Shull* found that the enhancement was not intended to apply where the only substantive offense at issue was an assault with a deadly weapon.

The statutes before us present no parallel or similar situation. Here, the most that can be said is that the substantive crime (§ 1320.5) and the sentence enhancement (§ 12022.1) share a common element insofar as both statutes seek to punish a defendant who commits a crime while released on bail. But as discussed, the gravamen of section 1320.5 is the defendant's act of jumping bail and consequent evasion of the court's process, while section 12022.1 turns on the defendant's on-bail recidivism.[5] Because the two statutes have distinct aims and punish for different reasons, the dissent's attempt to analogize to *Shull* fails.

In a similar vein, defendant argues that punishment should not be imposed under both statutes because section 1320.5 is a "specific" or "special" statute proscribing bail jumping that applies to the exclusion of section 12022.1, a "general" statute authorizing additional punishment for the same conduct.

We recently stated that "[t]he 'special over the general' rule . . . does not apply . . . unless 'each element of the "general" statute corresponds to an element on the face of the "specific" . . . statute' or 'it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute.' " (*Coronado, supra,* 12 Cal.4th at pp. 153-154, citing *People v. Jenkins* (1980) 28

---

[4]*Shull* contrasted the substantive crime of assault with a deadly weapon with the substantive crime of simple assault, observing that the only difference between the two, and the only basis for the authorization of increased punishment for the former, is use of a deadly weapon as a factor. (*Shull, supra,* 23 Cal.2d at p. 750.)

[5]As *People v. McClanahan, supra,* 3 Cal.4th 860, explained, a section 12022.1 enhancement addresses a "form of recidivism" (*McClanahan,* at p. 868), based not on a prior conviction, but on "the defendant's commission of a new felony offense while released from custody on an earlier felony of which he is ultimately convicted," even if the conviction of the earlier felony (the primary offense) occurs after both commission and conviction of the new felony (the secondary offense) (*id.* at p. 871).

Cal.3d 494, 502 [170 Cal.Rptr. 1, 620 P.2d 587].) The rule is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict. (See *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].)

Plainly, the terms of sections 1320.5 and 12022.1 are not identical; section 12022.1 contains a significant requirement that has no counterpart in section 1320.5, i.e., the defendant must be convicted of the primary offense before punishment can be imposed. Although section 12022.1, strictly speaking, does not appear to make the defendant's conviction of the primary offense an *element* of the enhancement in order to *prove* the enhancement, the statute makes crystal clear that *imposition of the enhancement* requires conviction of the primary offense at some stage of the proceedings. (§ 12022.1, subds. (b), (c), (d); see *People v. McClanahan, supra,* 3 Cal.4th at pp. 869-871.)

A review of the legislative history discloses that the Legislature crafted section 12022.1 in this manner because the enhancement posed "some difficulties of application because of the contingent nature of the triggering event, i.e., conviction for the first felony." (Sen. Com. on Judiciary, analysis of Assem. Bill No. 692 (1981-1982 Reg. Sess.) as amended Jan. 25, 1982, p. 2.) Because defendants who commit primary and secondary offenses in different counties often would be tried on their primary offense *after* a trial on their secondary offense (*id.* at pp. 2-3), and because defendants could be acquitted on the primary offense after being found guilty on the secondary offense, section 12022.1 was structured to stay imposition of the enhancement pending imposition of the sentence for the primary offense and to stay imposition of the enhancement permanently on a defendant's acquittal of the primary offense (§ 12022.1, subds. (b), (c), (d)). But because a conviction on the primary offense is an essential prerequisite to the imposition of punishment under section 12022.1, it must be taken into account for purposes of applying the special-over-general rule in the context of this case.

With this understanding, we conclude defendant has not shown satisfaction of the special-over-general rule here. First, he cannot show that the primary offense conviction requirement of section 12022.1 corresponds to any element on the face of section 1320.5. (See *Coronado, supra,* 12 Cal.4th at p. 154; *People v. Jenkins, supra,* 28 Cal.3d at p. 502.)

Second, the record before us contains no evidence indicating that a violation of section 1320.5 will necessarily or commonly result in the imposition of punishment under section 12022.1. (See *Coronado, supra,* 12 Cal.4th at p. 154; *People v. Jenkins, supra,* 28 Cal.3d at p. 502.) Indeed, as

the People point out, a charge on a primary offense can fail in any number of ways to result in a felony conviction and defeat section 12022.1's application. For example: (1) the prosecutor might move to dismiss the felony charge for insufficient evidence or after suppression of the evidence (§§ 1385, 1538.5); (2) the court might dismiss the charge or set aside the indictment or information (§§ 871, 995, 1385) or enter a judgment of acquittal before submission of the case to the jury (§ 1118.1); (3) the prosecutor might move to dismiss the charge in the interests of justice or reduce it to a misdemeanor as part of a plea bargain; (4) the court might reduce the charge to a misdemeanor (§ 17, subd. (b)); (5) the jury might acquit the defendant; or (6) the conviction might be reversed or dismissed on a state or federal writ of habeas corpus.

Legislative history further undermines the suggestion that defendants convicted and punished under section 1320.5 will necessarily or commonly receive punishment under section 12022.1. For instance, when the Legislature amended section 1320.5 in 1985 to make the failure-to-appear offense a felony rather than a misdemeanor, a number of legislative reports explained: "According to the Los Angeles District Attorney, the sponsor of this bill, failure to appear (FTA) when released on bail is occurring with alarming frequency in Los Angeles County. Because a conviction in an FTA case results in misdemeanor penalties, the sponsor claims that defendants accused of felonies with harsh penalties will fail to appear in order to postpone hearings and waste time, hoping that witnesses will disappear or forget what happened." (Assem. Com. on Pub. Safety, Rep. on Sen. Bill No. 1393 (1985-1986 Reg. Sess.) as amended May 6, 1985, p. 1; Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1393 (1985-1986 Reg. Sess.) as amended May 6, 1985, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 1393 (1985-1986 Reg. Sess.) as amended May 6, 1985, p. 1.) At least one of these reports noted the following statistic provided by the Los Angeles District Attorney: " 'There are approximately 200 cases a year in Los Angeles County where defendants jump bail, are subsequently apprehended, but the underlying felony cannot be prosecuted due to the unavailability or poor recollection of witnesses.' " (Assem. Com. on Pub. Safety, Rep. on Sen. Bill No. 1393 (1985-1986 Reg. Sess.) as amended May 6, 1985, p. 1; see also Assem. Com. on Pub. Safety, Republican analysis of Sen. Bill No. 1393 (1985-1986 Reg. Sess.) as amended May 6, 1985, p. 1 ["It often times pays to fail to appear. The memories of the victims fail or they move"].) If anything, this legislative history indicates that bail jumpers often are successful in avoiding convictions on the underlying felonies charged against them (i.e., the primary offenses to which section 12022.1 refers).

In sum, we conclude the Legislature intended the enhanced punishment of section 12022.1 to apply even where the only secondary offense at issue is a

willful failure to appear in court in violation of section 1320.5. The statutory language admits no ambiguity on the point, and the legislative history affirmatively supports this construction. Put another way, because nothing in the statutory language or history reflects a legislative purpose to disallow additional punishment under section 12022.1 when the only secondary offense is a violation of section 1320.5, the construction that comports most closely with the Legislature's apparent intent is one that gives effect to section 12022.1 under such circumstances. (See *Allen, supra,* 28 Cal.4th at p. 227; *Coronado, supra,* 12 Cal.4th at p. 151.)

### B. *Section 654*

Section 654 provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (*Id.,* subd. (a).) In this part of our opinion, we determine whether section 654 prohibits imposition of both the sentence for the failure-to-appear offense (§ 1320.5) and the sentence enhancement (§ 12022.1) because, in defendant's view, they are based on the same act or omission, for which defendant cannot be punished more than once.

*Coronado, supra,* 12 Cal.4th 145, is instructive. That decision observed, "there are at least two types of sentence enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense." (*Id.* at p. 156.) *Coronado* explained that the first category of enhancements is "attributable to the *defendant's status* as a repeat offender" (e.g., § 667.5, subd. (b)), while, by contrast, the second category of enhancements "arise[s] from the *circumstances of the crime* and typically focus[es] on what the defendant did when the current offense was committed" (e.g., §§ 12022.5, 12022.7). (*Coronado, supra,* 12 Cal.4th at pp. 156-157.)

*Coronado* reasoned that recidivist enhancements, such as prior prison term enhancements under section 667.5, subdivision (b), are attributable to the defendant's status as a repeat offender. (*Coronado, supra,* 12 Cal.4th at p. 156.) Because such enhancements "are not attributable to the underlying criminal conduct which gave rise to the defendant's prior and current convictions," they do not implicate multiple punishment of an act or omission. (*Id.* at p. 158.) *Coronado* applied such reasoning to hold that "a single prior conviction and resulting prison term may be used both to elevate a violation of Vehicle Code section 23152 to a felony under Vehicle Code

section 23175 and to enhance the sentence therefor under section [667.5, subdivision (b)] without violating section 654's bar against multiple punishment of an act or omission." (*Coronado, supra,* 12 Cal.4th at p. 159, fn. omitted.)

Turning to the enhancement statute before us, we find that section 12022.1 authorizes the imposition of additional punishment whenever it is established that a defendant is a felony recidivist who committed a secondary offense while released on bail pending proceedings on a primary offense. Like a prior prison term enhancement, then, a section 12022.1 enhancement turns on the status of a defendant as a repeat offender, not on what the defendant did when committing the current crime, i.e., the secondary offense. (*People v. Warinner, supra,* 200 Cal.App.3d at p. 1356; see *People v. McClanahan, supra,* 3 Cal.4th at p. 868 ["the purpose and intent behind a section 12022.1 enhancement, generally speaking, is . . . to penalize *recidivist* conduct with increased punishment"]; Sen. Com. on Judiciary, analysis of Assem. Bill No. 692 (1981-1982 Reg. Sess.) as amended Jan. 25, 1982, p. 5 ["This bill would add another status enhancement of two years for committing any felony while out on bail"]; see also *People v. McClanahan, supra,* 3 Cal.4th at pp. 870-871 [acknowledging the correctness of *People v. Tassell* (1984) 36 Cal.3d 77, 90 [201 Cal.Rptr. 567, 679 P.2d 1], insofar as it described § 12022.1 as an enhancement that goes to the nature of the offender].) Because a section 12022.1 enhancement does not punish a defendant for his or her conduct while committing an offense (here, willfully failing to appear in court as required in violation of section 1320.5), but rather punishes the defendant for his or her status as a repeat offender while on bail, the enhancement does not constitute punishment of an act or omission within the meaning of section 654.

Consistent with the reasoning of *Coronado, supra,* 12 Cal.4th 145, we hold that a sentence enhancement under section 12022.1 is not based on the same act or omission for which a defendant is subject to punishment under section 1320.5. Accordingly, section 654's bar against multiple punishment does not preclude the imposition of sentencing under both statutes.

### DISPOSITION

In this consolidated proceeding, defendant sustained convictions for at least one primary offense (§ 459, burglary) and one secondary offense (§ 1320.5, failure to appear) within the meaning of section 12022.1. Because section 1320.5 and section 12022.1 serve different purposes and do not punish defendant more than once for a single act or omission, punishment under both statutes is appropriate.

The judgment of the Court of Appeal is affirmed.

Chin, J., Brown, J., and Moreno, J., concurred.

**GEORGE, C. J.**—I respectfully dissent.

This case presents the question whether a defendant who is convicted of the felony of willfully failing to appear in court while on bail, a violation of Penal Code section 1320.5,[1] is subject, in addition to the sentence prescribed by that statute, to a consecutive two-year sentence enhancement under section 12022.1, commonly referred to as the "on-bail" enhancement provision, which applies generally to a person who commits *any* felony while on bail. Unlike the majority, I conclude that the general on-bail enhancement provision of section 12022.1 does not apply when the defendant's only on-bail offense is a violation of section 1320.5.

As I shall explain, past cases analyzing similar issues establish that when a specific substantive offense and a more general sentencing enhancement share common elements, a court, in determining whether the sentencing enhancement may be imposed in addition to the punishment for the substantive offense, must adopt " 'the construction that comports most closely with the apparent intent of the Legislature' " (*People v. Coronado* (1995) 12 Cal.4th 145, 155 [48 Cal.Rptr.2d 77, 906 P.2d 1232] [quoting *People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224]]; see also *In re Shull* (1944) 23 Cal.2d 745, 749-751 [146 P.2d 417]), and must consider, among other factors, whether a violation of the specific substantive offense "will necessarily or commonly" bring into play the more general enhancement provision. (*People v. Jenkins* (1980) 28 Cal.3d 494, 502 [170 Cal.Rptr.1, 620 P.2d 587]; *People v. Coronado, supra,* 12 Cal.4th at p. 154.)

With regard to the statutes involved in the present case, I believe it is clear that a violation of section 1320.5 will "commonly" (albeit not necessarily or invariably) bring into play the on-bail enhancement established by section 12022.1. Furthermore, although the Legislature clearly intended the increased punishment mandated by the general on-bail enhancement to apply to the great bulk of felonies (for example, robbery, burglary, or rape) that may be committed by persons who may or may not be on bail and whose punishment for such crimes does not already take into account whether the crime was committed by a person while released on bail, I believe that it is most reasonable to conclude that the Legislature did not intend the general on-bail enhancement provision to apply to an offense, like the one set forth in section 1320.5, that can be committed only by a defendant who is on bail

---

[1]Unless otherwise specified, subsequent section references are to the Penal Code.

and whose prescribed punishment already takes into account the circumstance that the offense was committed by a defendant while on bail.

In my view, the majority's contrary conclusion runs counter to common sense, and improperly authorizes the unreasonable "piling on" of a sentence enhancement in a manner that the Legislature almost certainly did not intend. Accordingly, I dissent.

I

I begin with a review of the terms of both statutes.

Section 1320.5 provides that a person charged with or convicted of a felony and released on bail who, in order to evade the process of the court, willfully fails to appear as required, is guilty of a felony.[2] Because section 1320.5 does not designate a specific state prison term, under section 18 a violation of section 1320.5 is punishable by imprisonment in state prison "for 16 months, or two or three years."[3]

Section 12022.1, unlike section 1320.5, does not define a distinct criminal offense, but instead sets forth a sentence enhancement specifying circumstances under which a defendant convicted of a substantive offense will have his or her sentence "enhanced," i.e., increased. Section 12022.1 provides that if a person charged with a felony (referred to in the section as "the primary offense") is released on bail or on his or her own recognizance, and subsequently is arrested for having committed another felony (referred to as "the secondary offense") while released from custody on the primary offense, he or she "shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutively to any other term imposed by the court." (*Id.*, subd. (b).) The statute further provides that whenever the person is sentenced on the secondary offense prior to conviction on the primary offense, the imposition of the enhancement must be

---

[2]Section 1320.5 provides in full: "Every person who is charged with or convicted of the commission of a felony, who is released from custody on bail, and who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony. Upon a conviction under this section, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) or by imprisonment in the state prison, or in the county jail for not more than one year, or by both the fine and imprisonment. Willful failure to appear within 14 days of the date assigned for appearance may be found to have been for the purpose of evading the process of the court."

[3]Section 18 provides in pertinent part: "Except in cases where a different punishment is prescribed by any law of this state, every offense declared to be a felony . . . is punishable by imprisonment in any of the state prisons for 16 months, or two or three years . . . ."

stayed pending imposition of sentence on the primary offense, and that the stay shall become permanent if the person is acquitted of the prior offense.[4]

## II

Defendant initially contends that punishing an individual under both of these statutes when the charged offense and the sentencing enhancement arise from a single act of failing to appear in court while released on bail violates the terms of section 654, subdivision (a) which provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." In my view, however, there is no need to reach the question of the proper application of section 654 to the two statutes here at issue, because this case may be resolved on the basis of a threshold legal question that logically precedes the section 654 issue. Section 654 comes into play only when two separate statutory provisions actually authorize the imposition of punishment in a given situation. For the reasons discussed below, I conclude that the two-year on-bail sentence enhancement set forth in section 12022.1 was not intended, and should not be interpreted, to apply when a defendant's only on-bail offense is a failure to appear while on bail in violation of section 1320.5. Accordingly, the question of the proper application of section 654 need not be addressed in this case.[5]

[4]Section 12022.1 provides in pertinent part:

"(a) For the purpose of this section only:

"(1) 'Primary offense' means a felony offense for which a person has been released from custody on bail or on his or her own recognizance . . . .

"(2) 'Secondary offense' means a felony offense alleged to have been committed while the person is released from custody for a primary offense.

"(b) Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court.

"(c) The enhancement allegation provided in subdivision (b) shall be pleaded in the information or indictment which alleges the secondary offense . . . .

"(d) Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense. The stay shall be lifted by the court hearing the primary offense at the time of sentencing for that offense and shall be recorded in the abstract of judgment. If the person is acquitted of the primary offense the stay shall be permanent."

[5]As this court has observed in prior decisions, the Courts of Appeal are divided on the general question of whether section 654 applies to sentence enhancements. (See, e.g., *People v. Coronado, supra*, 12 Cal.4th 145, 157; *People v. Jones* (1993) 5 Cal.4th 1142, 1152 [22 Cal.Rptr.2d 753, 857 P.2d 1163].)

## III

As already noted, in a number of past cases our court has been called upon to determine whether, when a statute setting forth a specific substantive offense shares common factors with a more general sentence enhancement provision, the statute establishing the sentence enhancement properly should be interpreted to apply to, and increase the sentence pertaining to, the more specific substantive offense.

The early case of *In re Shull, supra*, 23 Cal.2d 745, presented the issue in a context somewhat analogous to the case before us. In *Shull*, this court addressed the question whether a defendant who was convicted of the crime of assault with a deadly weapon, a pistol (§ 245), and who received a 10-year sentence for that offense, also was subject to an additional five-to-10-year sentence by virtue of the provisions of section 3 of the Deadly Weapons Act. That statute provided in relevant part: " 'If any person shall commit or attempt to commit any felony within this state while armed with any of the weapons mentioned in section one thereof or while armed with any pistol, revolver or other firearm . . . , he shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in a state prison for not less than five nor for more than ten years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he stands convicted and shall not run concurrently with such sentence.' " (*In re Shull, supra*, 23 Cal.2d at p. 748, italics omitted.) The trial court in *Shull* imposed an additional five-year term on the defendant under section 3 of the Deadly Weapons Act, but on appeal this court, in a unanimous decision, held that the Legislature had not intended the additional sentence mandated by the Deadly Weapons Act to apply to a defendant convicted of assault with a deadly weapon.

In reaching this conclusion, this court explained: "We do not believe . . . that the Legislature intended that section 3 of the Deadly Weapons Act should be applied where the felony of which the person stands convicted is that of assault with a pistol under section 245 of the Penal Code. . . . It is apparent that section 245 of the Penal Code is a specific provision. It defines and determines the punishment for a specific kind of a crime, assault with a deadly weapon, in the instant case, a pistol. On the other hand, section 3 of the Deadly Weapons Act which imposes the additional penalty refers to no particular crime, but purports to require an added punishment for felonies generally where the one committing the same is armed with a pistol or the other weapons designated therein and in section 1. It is the general rule that a special statute controls over a general statute. [Citation.] It is not unreasonable to suppose that the Legislature believed that for felonies in which

the use of a gun was not one of the essential factors, such as rape, larceny, and the like, an added penalty should be imposed by reason of the fact that the defendant being armed with such a weapon would probably be more dangerous because of the probability of death or physical injury being inflicted by the weapon. Hence, such a condition would be reasonable grounds for increasing the penalty where felonies are involved which do not include as a necessary element being armed with a pistol. The Legislature has by other acts imposed an additional punishment where the only additional factor, being armed with a deadly weapon, is present. The only difference between a simple assault and one with a deadly weapon is the latter factor. The commission of a simple assault is declared a misdemeanor, and the punishment therefor is a fine of not over $500 or imprisonment in the county jail for six months, or by both. [Citation.] When there is added to the assault the use of a deadly weapon the punishment is increased to imprisonment in the state prison not exceeding ten years . . . . [T]he Legislature has fixed the punishment for an assault where a deadly weapon is used, a particular crime, and it is not to be supposed that for the same offense without any additional factor existing the added punishment should be imposed. In felonies where a deadly weapon is not a factor in the offense, the additional punishment is imposed by section 3 of the Deadly Weapons Act, because of the additional factor of a deadly weapon being involved." (*In re Shull, supra*, 23 Cal.2d at pp. 749-751; see also, e.g., *People v. Ford* (1964) 60 Cal.2d 772, 794 [36 Cal.Rptr. 620, 388 P.2d 892] [applying *Shull* to hold that when a prior conviction is an element of an offense, the same conviction may not be used to augment the punishment for that offense]; *People v. Edwards* (1976) 18 Cal.3d 796, 800 [135 Cal.Rptr. 411, 557 P.2d 995] [same].)

As applied to the two statutes at issue in the present case, the reasoning in *Shull* supports the conclusion that the sentence enhancement mandated by the general on-bail enhancement provision of section 12022.1 should not be interpreted to apply when the only on-bail offense of which the defendant is convicted is the offense of failing to appear while on bail in violation of section 1320.5. Like the punishment for the offense of assault with a deadly weapon at issue in *Shull*, the punishment for the crime of failing to appear while on bail under section 1320.5 already takes into account the circumstance that the offense was committed by the defendant while on bail. The Legislature intended that, in general, the on-bail enhancement of section 12022.1 should increase the sentence imposed upon persons who commit felonies while on bail, but that objective reasonably applies only to offenses whose punishment does not already take into account the circumstance whether the crime was committed by a person while released on bail, and does not apply to a crime, like that proscribed by section 1320.5, in which

the on-bail element already is reflected in the basic punishment for the offense. Thus, as in *Shull*, it is reasonable to conclude that the Legislature did not intend the enhancement set forth in section 12022.1 to apply to, and increase the sentence for, a defendant convicted under section 1320.5 of failing to appear while on bail.

## IV

In opposition to this conclusion, the People maintain that more recent decisions of this court, decided after *In re Shull, supra,* 23 Cal.2d 745, have defined more narrowly the circumstances under which a "general" enhancement statute will be found inapplicable to a "specific" or "special" substantive offense. As the People point out, in a number of recent opinions we have stated that "[t]he 'special over the general' rule . . . does not apply . . . unless 'each element of the "general" statute corresponds to an element on the face of the "specific" . . . . statute' or 'it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute.' " (*People v. Coronado, supra,* 12 Cal.4th 145, 153-154 [quoting *People v. Jenkins, supra,* 28 Cal.3d 494, 502].) The People claim that under this formulation, the enhancement set forth in section 12022.1 properly may be applied in addition to the punishment prescribed by section 1320.5.

Although it is true that the terms of sections 1320.5 and 12022.1 are not identical, the overlap of the two statutes is more substantial than the People suggest. Contrary to the People's assertion and to the assumption of the Court of Appeal, section 12022.1 does not make the defendant's conviction of the primary offense (i.e., the felony on which the defendant has been released on bail) an *element* of the enhancement. In setting forth the elements of the enhancement, section 12022.1, subdivision (b) provides in full: "Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court." Section 12022.1, subdivision (d) then provides: "Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense. The stay shall be lifted by the court hearing the primary offense at the time of sentencing for that offense and shall be recorded in the abstract of judgment. If the person is acquitted of the primary offense the stay shall be permanent."

Thus, section 12022.1 provides that an enhancement under that section may be alleged and "proved" even if the defendant has not been convicted of the primary offense. (See *People v. McClanahan* (1992) 3 Cal.4th 860, 870 [12 Cal.Rptr.2d 719, 838 P.2d 241].) The statute specifies that if the defendant thereafter is acquitted of the primary offense, the imposition of sentence on the enhancement is permanently stayed, but the statute does not provide for the striking or vacation of the true finding on the enhancement itself. Accordingly, given the terms of section 12022.1, a violation of the failure-to-appear offense set forth in section 1320.5 will "necessarily or commonly" result in an enhancement set forth in section 12022.1, although sentence on the on-bail enhancement will not be "*imposed* unless the defendant is ultimately convicted of the 'primary' and 'secondary' offenses." (*People v. McClanahan, supra,* 3 Cal.4th at p. 869.) Moreover, contrary to the majority's assertion, the circumstance that there will be *some* instances in which the increased sentence provided by the sentence enhancement will not be imposed—where a defendant who jumps bail is not convicted of the charge upon which he or she was released on bail—certainly does not mean that a defendant who is convicted of jumping bail under section 1320.5 will not *commonly* also be subject to an increased sentence by virtue of the provisions of section 12022.1. In light of the overlap of the two statutes, I believe that the "necessarily or commonly" standard set forth in *People v. Jenkins, supra,* 28 Cal.3d 494, 502, and *People v. Coronado, supra,* 12 Cal.4th 145, 154, is satisfied.

## V

Both *In re Shull* and our more recent decisions recognize that the entire special/general doctrine is, in essence, simply "a rule designed to ascertain and carry out legislative intent." (*People v. Jenkins, supra,* 28 Cal.3d 494, 505, fn. omitted; see also *People v. Coronado, supra,* 12 Cal.4th 145, 155 [adopting " 'the construction that comports most closely with the apparent intent of the Legislature' "].) In my view, both the language and the legislative history of section 12022.1 indicate that *the principal purpose* underlying that enactment was to increase the punishment imposed upon defendants who commit a felony while released on bail.[6] In light of this purpose, it is not reasonable to conclude that the Legislature intended this enhancement to apply to increase the sentence of an offense, like section 1320.5, which

---

[6]A committee report on the bill that ultimately enacted section 12022.1 stated in this regard: "The purpose of the bill is to attempt to deter the commission of felonies by accused felons released on bail, and to punish such conduct." (Sen. Com. on Judiciary, analysis of Assem. Bill No. 692 (1981-1982 Reg. Sess.) as amended Jan. 25, 1982, p. 2.)

already takes into account the circumstance that the crime was committed while the defendant was on bail.[7]

The People contend, however, that punishment under both statutes is proper because the statutes in fact serve different goals. The People assert, in this regard, that "[w]hile the object of section 1320.5 is to punish defendants who violate the court's trust by willfully failing to appear (*People v. Jimenez* [(1993)] 19 Cal.App.4th 1175, 1178 [24 Cal.Rptr.2d 137]), section 12022.1 was enacted primarily to punish recidivists (*People v. McClanahan, supra,* 3 Cal.4th 860, 868.)" Although the majority agree with this contention, in my view it is not persuasive.

The majority apparently view the primary purpose of the on-bail enhancement as targeting *recidivism,* as distinguished from *deterring and punishing the breach of the court's trust that is demonstrated when a defendant commits an offense while released on bail,* because section 12022.1 contains a section that provides that imposition of the enhancement is to be permanently stayed if the defendant is not convicted of the crime with which he or she was initially charged and placed on bail. (§ 12022.1, subd. (d).) As we explained in *In re Jovan B.* (1993) 6 Cal.4th 801 [25 Cal.Rptr.2d 428, 863 P.2d 673], however, this portion of section 12022.1 "appears principally intended to establish with judicial certainty that the charges leading to release on bail or O.R. [own recognizance] were valid. In other words, *the Legislature has declined to apply the bail/O.R. enhancement to an offense unless a court has also sustained the charge on which the offender was released when he committed it.*" (*In re Jovan B., supra,* 6 Cal.4th at p. 814, italics added, fn. omitted.) Although this aspect of section 12022.1 does limit the circumstances under which the on-bail enhancement may be imposed, I believe the majority is mistaken in viewing this incidental, ameliorative feature of the statute as fundamentally altering the nature and primary purpose of the on-bail enhancement.

Indeed, although the majority rely on *People v. McClanahan, supra,* 3 Cal.4th 860, to support their argument that the purpose of section 12022.1 is

[7]As the majority note, one committee report on the bill that ultimately enacted section 12022.1, after describing the purpose of the bill as "to provide extra punishment for committing crimes while out on bail or [own recognizance]," stated that "[c]urrent law provides for criminal sanctions for failure to appear after being released on one's own recognizance or on 10% deposit (for a misdemeanor)," and then posed the question "Would this bill provide for double punishment for these crimes?" (Assem. Com. on Crim. Justice, analysis of Assem. Bill No. 692 (1981-1982) p. 3.) Nothing in the legislative history of the measure, however, indicates that the Legislature answered this question in the affirmative. (Cf. *People v. Jenkins, supra,* 28 Cal.3d 494, 506-508.)

different from the breach-of-trust purpose underlying section 1320.5, in *McClanahan* this court specifically agreed with the proposition that an on-bail enhancement is "imposed *for the violation or breach of the court's trust* involved when the defendant commits a new felony offense while released from custody on bail or on his or her own recognizance on an earlier felony" (*McClanahan, supra,* at p. 871, italics added), observing that the conduct that brings into play the on-bail enhancement—committing a new crime while the defendant is released on bail or on his or her own recognizance—"*plainly constitutes a breach of the releasing court's trust* and the terms of any release agreement." (*Ibid.,* italics added.) Thus, the focus of both sections 1320.5 and 12022.1 is on punishing the particular type of breach of trust demonstrated when a defendant commits a new offense while released on bail.[8]

The majority also maintain that it is appropriate to impose punishment under the two statutes because the specific purpose of the failure-to-appear offense is to deter "bail jumping," whereas the purpose of the on-bail enhancement extends beyond the deterrence of bail jumping. The majority emphasize in this regard that the legislative history of the failure-to-appear statute makes it clear that the Legislature believed it was important to impose punishment for bail jumping whether or not the defendant is ultimately convicted of the offense for which he or she was released on bail, whereas the on-bail enhancement may be imposed only when the defendant actually is convicted of the primary offense. (Maj. opn., *ante,* at pp. 582-584.) Although the two statutes do differ in this respect, this difference does not support the majority's conclusion that the Legislature intended the on-bail enhancement to increase the punishment for the crime of failure to appear whenever a defendant is convicted of the primary offense.

As the majority observe, the substantive crime of failure to appear while on bail, set forth in section 1320.5, applies whether or not the defendant is convicted of the charges on which he or she has been released on bail. Thus, a defendant who "jumps" bail in order to impede the judicial process cannot escape punishment *under section 1320.5* even if he or she is not convicted of

---

[8]In *People v. McClanahan, supra,* 3 Cal.4th 860, the court did state that the purpose behind a section 12022.1 enhancement, "generally speaking, is . . . to penalize *recidivist* conduct with increased punishment" (*McClanahan,* at p. 868), but the court at the same time explained that the "particular form of recidivism" to which the statute was directed was "the commission of a new felony offense while released on bail or on one's own recognizance." (*Id.* at pp. 868, 869.) The court's reference to, and discussion of, recidivism in *McClanahan* was made in the course of an analysis—and *rejection*—of the People's argument in that case that the on-bail enhancement was exempt from the double-the-base-term limitation of section 1170.1, by virtue of a provision of Proposition 8 providing that "[a]ny prior felony conviction . . . shall . . . be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding." (Cal. Const., art. I, § 28, subd. (f).)

the primary offense, just as a defendant who commits robbery while on bail cannot escape punishment *for the robbery* even when the on-bail enhancement may not be imposed because he or she is not convicted of the charges on which he or she had been released on bail. The circumstance that the Legislature has determined that the on-bail enhancement should not be imposed unless the defendant is convicted of both the secondary and primary offenses, however, does not support the majority's conclusion that when the sentence for the defendant's secondary offense already takes into account the circumstance that the offense was committed by the defendant while on bail, the Legislature intended that the sentence should be increased by imposition of the on-bail enhancement simply because the defendant has been convicted of the earlier charge.

As discussed above, the fundamental purpose of the on-bail *enhancement* is to increase the punishment received by those felons whose culpability is greater (because they have committed the new secondary felony while on bail) than that of other felons who commit the same secondary offense. That objective is not served, however, when—because being on bail is an element of the secondary offense—*all* persons who commit the secondary offense by definition were on bail when they committed the offense. Imposing the on-bail enhancement when the sentence for the secondary offense already takes into account the circumstance that the offense was committed by the defendant while on bail appears on its face to constitute an unwarranted form of double punishment that the Legislature very likely did not intend.

Of course, the Legislature, if it so chose, could provide *explicitly* that a defendant who violates section 1320.5 is subject to both the sentence prescribed for that offense and, in addition, the sentence enhancement embodied in section 12022.1. (Cf. Health & Saf. Code, § 11370.2, subds. (a), (b), (c).) In the absence of any persuasive indication that the Legislature actually intended the on-bail enhancement of section 12022.1 to apply to, and substantially increase, the sentence for an offense *whose punishment* already takes into account the circumstance that the crime was committed while the defendant was on bail, however, I conclude that section 12022.1 should not be interpreted to apply to such an offense.

Accordingly, I respectfully dissent.

Kennard, J., and Werdegar, J., concurred.