Filed 7/31/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C078169 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF 12-4740) |
| v. | |
| JESSE DAVID PEREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Yolo County, Paul K. Richardson, Judge.  Affirmed.

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Kevin L. Quade, Deputy Attorney General, for Plaintiff and Respondent.

1

When a person willfully fails to appear (FTA) after own recognizance release (OR) pending a felony charge, a charged FTA is a felony, but when the underlying charge is a misdemeanor, the FTA is a misdemeanor. (Pen. Code, § 1320, subds. (a) & (b).)[1]

After defendant Jesse David Perez was released OR on a felony drug charge, he was convicted of both the drug and felony FTA charges and sentenced to prison. He appealed, voluntarily dismissed his appeal, and his conviction became final in early 2014.

On November 4, 2014, the People, acting through their reserved initiative powers, passed Proposition 47, the Safe Neighborhoods and Schools Act (the Act), which, among other things, reduced defendant's drug charge to a misdemeanor. Defendant petitioned to modify his drug sentence under the Act, and also sought to have the FTA reduced to a misdemeanor, reasoning that because the underlying charge was now a misdemeanor "for all purposes" under the Act (see § 1170.18, subd. (k)), the FTA should be reduced to a misdemeanor. The trial court reduced the drug charge to a misdemeanor, declined to reduce the FTA, and sentenced defendant to prison based on the felony FTA.

The gravamen of an FTA charge is that a person willfully evades court process after promising to appear in lieu of posting bail. That act--willfully failing to appear--is deemed by the Legislature to be more serious when the underlying charge is a felony. The outcome of the underlying charge is irrelevant to the degree of the FTA crime. Nothing in the Act changes this view. Accordingly, we shall affirm.

## PROCEDURAL BACKGROUND

On July 24, 2013, defendant pleaded no contest to possession of a controlled substance and felony FTA, and admitted a strike (residential burglary). (Health & Saf. Code, § 11377, subd. (a); §§ 459, 667, subd. (e)(1), 1320, subd. (b).) Defendant was

---

[1] Further undesignated statutory references are to the Penal Code.

2

sentenced to two years for the drug charge, doubled to four years for the strike, and to a concurrent two-year midterm for the FTA. At his request, we dismissed defendant's direct appeal (case No. C074641), and issued our remittitur on January 10, 2014.[2]

On November 18, 2014, defendant petitioned to recall his drug sentence as provided by the Act. Later he supplemented his claim by contending the FTA should now be deemed a misdemeanor FTA, not a felony FTA, characterizing the extant felony FTA sentence as an "unauthorized" sentence.

The trial court granted defendant's petition to the extent it sought reduction of the drug charge to a misdemeanor, but declined to reduce the FTA to a misdemeanor. The court sentenced defendant to the lower term of 16 months in prison for the FTA, doubled to 32 months for the strike.[3] Defendant appealed.

## DISCUSSION

There is no dispute that defendant's felony drug offense, committed in 2012, was properly reduced to a misdemeanor, and no dispute that defendant timely moved for

---

[2] The People assert--and defendant concurs--that defendant's conviction became final upon issuance of the remittitur. The People then argue defendant's conviction was final at that moment within the meaning of *In re Estrada* (1965) 63 Cal.2d 740. We agree that the conviction became final for *some* purposes at that moment (see, e.g., 6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Appeal, § 196, p. 481), but as we held long ago, "finality" can mean different things. *For retroactivity purposes,* a conviction does not become final until the time in which to petition for certiorari in the United States Supreme Court has passed. (*In re Pine* (1977) 66 Cal.App.3d 593, 594-596 & fn. 2 ["The confusion as to what constitutes a 'final judgment' within the meaning of the principles announced in (*Estrada*), results from the multiple use of that term"].) The People do not explain how defendant's abandonment of his appeal rendered his conviction final for retroactivity purposes immediately upon issuance of the remittitur. In any event, the parties impliedly agree the conviction became final sometime before the Act passed.

[3] For reasons not explained in the record or challenged on appeal, it does not appear that the trial court imposed a new misdemeanor sentence on the drug charge. We decline to address this point, as it is not briefed.

3

recall and resentencing for that offense. In contesting the FTA's status as a felony charge after the underlying charge has been reduced to a misdemeanor, defendant rests his appeal on the purposes of the Act, and on one provision of the Act in particular.

The broad purposes of the Act are "to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70.)

The specific provision of the Act defendant emphasizes is section 1170.18, subdivision (k), which provides in full: "Any felony conviction that is recalled and resentenced under subdivision (b) or designated as a misdemeanor under subdivision (g) *shall be considered a misdemeanor for all purposes*, except that such resentencing shall not permit that person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6." (Italics added.)

Thus, defendant argues, with the exception of certain firearms offenses, the Act declares that his drug offense must now be considered a misdemeanor for all purposes, and he includes in those *purposes* what he characterizes as the reduction of his FTA conviction from a felony to a misdemeanor.

Although we understand defendant's argument, we disagree.

The Act allows persons " 'currently serving' " a felony sentence for an offense that is now a misdemeanor to petition for recall of that sentence and for resentencing under the Act, and allows persons who have served their felony sentence to apply to have their "felony convictions 'designated as misdemeanors.' " (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1092, 1093.) But language in the Act that makes felonies misdemeanors for all purposes does not apply retroactively. (*Id*. at p. 1100.)

4

The Act does not speak to *pendent* or *ancillary* offenses, but only to the offenses listed therein. Defendant's drug conviction *is* now being treated as a misdemeanor "for all purposes," but that has no bearing whatsoever on the FTA charge.

Statutory authority to release a defendant on OR based on a written promise to return to court, instead of requiring bail, commenced over a half-century ago. (See Stats. 1959, ch. 1340, § 1, pp. 3612-3613 [enacting former §§ 1319.4 & 1319.6, analogous to current subds. (a) & (b) of § 1320, absent a specific intent element].) However, the practice of OR release predated any statutory basis therefor. (*In re Smiley* (1967) 66 Cal.2d 606, 612.) In concluding a person released OR was in sufficient custody to bring a habeas corpus action, our Supreme Court emphasized that "the statute requires the defendant to file an agreement in writing promising to appear at all times and places ordered and waiving extradition if he fails to do so and is apprehended outside California [citation], and makes wilful failure to appear punishable as an independent crime." (*Id.* at p. 613; see § 1318 [describing contents of required written agreement].)[4]

As we have observed before, "[t]he criminal conduct proscribed by section 1320, subdivision (b), is grounded in the violation of a contractual agreement between a

---

[4] Section 1320 reads in full as follows: "(a) Every person who is charged with or convicted of the commission of a misdemeanor who is released from custody on his or her own recognizance and who in order to evade the process of the court willfully fails to appear as required, is guilty of a misdemeanor. It shall be presumed that a defendant who willfully fails to appear within 14 days of the date assigned for his or her appearance intended to evade the process of the court. [¶] (b) Every person who is charged with or convicted of the commission of a felony who is released from custody on his or her own recognizance and who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony, and upon conviction shall be punished by a fine not exceeding five thousand dollars ($5,000) or by imprisonment pursuant to subdivision (h) of Section 1170, or in the county jail for not more than one year, or by both that fine and imprisonment. It shall be presumed that a defendant who willfully fails to appear within 14 days of the date assigned for his or her appearance intended to evade the process of the court." (Stats. 2011, ch. 15, § 459 [part of 2011 Realignment Legislation].)

defendant and the People." (*People v. Jenkins* (1983) 146 Cal.App.3d 22, 28.) It is now a specific intent crime (see *People v. Wesley* (1988) 198 Cal.App.3d 519, 522-524 [discussing statutory history]), and a crime of moral turpitude (see *People v. Maestas* (2005) 132 Cal.App.4th 1552, 1556-1557), that is complete when the defendant willfully fails to appear "in order to evade the process of the court." (§ 1320, subds. (a) & (b).)

The severity of an FTA is not lessened by the outcome of the underlying charge, because section 1320 applies to persons charged with *or* convicted of crimes. The "convicted of" language was added to clarify that the statutes applied to persons on bail postconviction, which had been uncertain before. (See *People v. Jimenez* (1993) 19 Cal.App.4th 1175, 1177-1181 [resolving issue as to section 1320.5 (the on-bail FTA statute)], followed by Stats. 1996, ch. 354, §§ 2-3, pp. 2452-2453 [amending both section 1320 and 1320.5 to encompass postconviction FTAs].) The usage of "or" unaccompanied by any indication that what follows is qualified, "indicates an intention to use [or] disjunctively so as to designate alternative or separate categories." (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680.) A defendant is charged with crimes contained in an accusatory pleading, which exists to provide defendant with notice of the charges. (See *People v. Fitzgerald* (1997) 59 Cal.App.4th 932, 936; §§ 950, 952.) By executing the written OR agreement required by section 1318, defendant acknowledged the consequences for willfully failing to appear, and contrary to his view, the *disposition* of whatever he was charged with is of no moment.

In *People v. Walker* (2002) 29 Cal.4th 577, our Supreme Court interpreted a similar statute, providing for a penalty enhancement when a defendant who is on bail for one offense commits another (§ 12022.1). The new offense committed while Walker was out on bail was FTA while on bail (§ 1320.5), a statute similar to the FTA statute directly at issue in this case (§ 1320, subd. (b)). *Walker* held that imposing separate punishment for the FTA and the on-bail enhancement was appropriate, because the two statutes served different purposes. In part, *Walker* observed that "[w]ith respect to section

6

1320.5, the legislative history states explicitly that its purpose is 'to deter bail jumping.' [Citations.]  The language and history of section 1320.5 also reflect the Legislature's view that fulfillment of this purpose requires punishment *whether or not the defendant ultimately is convicted of the charge for which he or she was out on bail when failing to appear in court as ordered*."  (*Walker*, at p. 583, italics added.)

As *Walker* pointed out, many things can happen to an underlying charge:

> "For example: (1) the prosecutor might move to dismiss the felony charge for insufficient evidence or after suppression of the evidence (§§ 1385, 1538.5); (2) the court might dismiss the charge or set aside the indictment or information (§§ 871, 995, 1385) or enter a judgment of acquittal before submission of the case to the jury (§ 1118.1); (3) the prosecutor might move to dismiss the charge in the interests of justice or reduce it to a misdemeanor as part of a plea bargain; (4) the court might reduce the charge to a misdemeanor (§ 17, subd. (b)); (5) the jury might acquit the defendant; or (6) the conviction might be reversed or dismissed on a state or federal writ of habeas corpus."  (*People v. Walker*, *supra*, 29 Cal.4th at p. 587.)

Similarly, many things can happen to the underlying charge on a felony FTA, including its reduction to a misdemeanor as occurred here.  But none of these outcomes alters the severity of the defendant's act *at the time* he or she willfully evaded the process of the court.

Other cases involving a defendant's status are in accord with *Walker*.

For example, a felon in possession of a firearm cannot halt a prosecution for such crime by attacking the validity of the underlying felony, because the offense is based on that person's status *at the time of possession*.  (See *People v. Harty* (1985) 173 Cal.App.3d 493, 499-500 [construing former section 12021; "the possible invalidity of an underlying prior felony conviction provides no defense to possession of a concealable

weapon by a felon"]; see also *People v. Sanchez* (1989) 211 Cal.App.3d 477, 479-481 [equivalent holding construing former section 12021.1].)[5]

We extended this "status" rule in *In re Watford* (2010) 186 Cal.App.4th 684. Watford was convicted of a sex offense in Massachusetts, and convicted in California of failing to register as a sex offender; we affirmed his conviction on appeal. (*Id*. at pp. 686-687.) Watford then successfully moved to set aside his plea in the Massachusetts case, and the sex charge was dismissed. (*Id*. at p. 687.) Watford then sought habeas corpus relief in this court, contending that by eliminating the underlying sex conviction, he vitiated the conviction for failing to register. (*Ibid*.)

We rejected this view. (*In re Watford*, *supra*, 186 Cal.App.4th at pp. 687-694.) We emphasized that the issue was whether "*at the time of the failure to register*, the petitioner was under a legal duty to register." (*Id*. at p. 690, italics added.) "The [sex offender statute's] regulatory purpose is fulfilled by requiring the sex offender to register based upon the fact of conviction until such time as the predicate conviction may be invalidated." (*Id*. at p. 691.) "The Legislature determined that persons convicted of sex offenses present a sufficient risk to society to justify requiring them to register, and holding them accountable for not registering, even if the predicate offense existing when the offender fails to register is later invalidated." (*Id*. at p. 693.)

Similarly, in this case, the Legislature has determined that a person released OR *while facing felony charges* should be punished as a felon if she or he violates the promise to appear, whereas a person released OR *while facing misdemeanor charges*

---

[5] As defendant points out, section 17, subdivision (b), authorizing the reduction of certain offenses to misdemeanors, uses the same "for all purposes" language as used in the Act. (See *People v. Rivera*, *supra*, 233 Cal.App.4th at p. 1100.) When a felon's conviction is reduced under section 17, subdivision (b), he or she is no longer treated as a felon, absent an explicit statutory exception. (See *People v. Park* (2013) 56 Cal.4th 782, 793-795; *People v. Gilbreth* (2007) 156 Cal.App.4th 53, 57-58.)

should be punished as a misdemeanant for breaching such promise. That is an eminently rational distinction for the Legislature to make, and here, defendant was facing a felony charge when he breached his promise, not a misdemeanor charge.

In short, the reduction of the underlying drug charge has no effect on defendant's felony FTA charge, as the trial court properly concluded.

## DISPOSITION

The order resentencing defendant under the Act is affirmed.


      DUARTE      , J.


We concur:


      RAYE      , P. J.


      MAURO      , J.