Filed 4/2/19 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>MICHAEL JOSEPH,<br><br>    Defendant and Appellant. | B285062<br><br>(Los Angeles County Super. Ct. No. MA069423)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on March 5, 2019, is modified as follows:

At sentence one in the carryover paragraph at the start of page three, "(2) the impact of the recent Court of Appeal decision in *People v. Sun* (2018) 29 Cal.App.5th 946 (*Sun*) on Joseph's preemption contention." shall be changed to "(2) the

impact of a recent Court of Appeal decision that has since been depublished."

At sentence two of the first full paragraph on page eleven, "(2) the impact, if any, of the recent Court of Appeal decision in *Sun, supra,* Cal.App.5th 946, with respect to this issue." shall be changed to "(2) the impact, if any, of a recent Court of Appeal decision that has since been depublished."

The entire section beginning with the section header "*People v. Sun*" on page nineteen through the first full sentence at the start of page twenty-one, which states "The Court of Appeal reversed the defendant's two convictions for assault with a deadly weapon. (*Id.* at p. 953.)" and footnote six shall be deleted.

At sentence three in the first full paragraph on page twenty-one, the portion of the citation stating "; see also *Sun, supra,* 29 Cal.App.5th at p. 951 [statutes contained disparate elements such that each could be violated without violating the other]" shall be deleted.

At sentence six in the first full paragraph on page twenty-two, the portion of the citation stating "; *Sun, supra,* 29 Cal.App.5th at p. 953 [holding that discharging a laser into the cockpit of an airborne helicopter at night will commonly constitute assault with a deadly weapon]" shall be deleted.

At footnote seven on page twenty-three, the portion of the citation stating "*Sun, supra,* 29 Cal.App.5th at p. 953, fn. 3; " shall be deleted. Footnote seven on page twenty-three shall be renumbered as footnote six.

The petition for rehearing is denied.  There is no change in judgment.

_____
      MOOR, J.                       KIM, J.

Filed 3/5/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL JOSEPH,<br><br>    Defendant and Appellant. | B285062<br><br>(Los Angeles County Super. Ct. No. MA069423) |

APPEAL from judgment of the Superior Court of Los Angeles County, Charles A. Chung, Judge.  Affirmed in part, reversed in part.

Joshua Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews,

Supervising Deputy Attorney General, Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury found defendant and appellant Michael Joseph guilty of two counts of second degree robbery (Pen. Code, §211 [counts 1 & 2])[1] and one count of perjury by declaration (§ 118, subd. (a) [count 3]).[2]

Joseph was sentenced to seven years in state prison, consisting of the upper term of five years in count 1, plus one year each in counts 2 and 3 (one third of the middle term).

Joseph contends that there is insufficient evidence to support his robbery conviction because the prosecution failed to demonstrate the robbery was accomplished using force.

In the opening brief, Joseph also contended he was incorrectly charged with perjury under section 118, subdivision (a), a felony, when he should have been charged with falsely reporting a crime to police under section 148.5, subdivision (a), a misdemeanor.  Following our review of the record, we requested that the parties file supplemental briefing to address:  (1) whether Vehicle Code section 10501, subdivision (a) preempts section 148.5, subdivision (a), or

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Co-defendant Tyree McFarland was also charged in counts 1 and 2, but pleaded no contest and is not a party to this appeal.

section 118, subdivision (a); and (2) the impact of the recent Court of Appeal decision in *People v. Sun* (2018) 29 Cal.App.5th 946 (*Sun*) on Joseph's preemption contention. Joseph now contends that Vehicle Code section 10501, subdivision (a) preempts section 118, subdivision (a). The Attorney General maintains the argument that it does not.

We affirm the judgment with respect to the counts of second degree robbery (§211 [counts 1 & 2]), but reverse the perjury conviction (§ 118, subd. (a) [count 3]).

## FACTS[3]

On the evening of August 28, 2016, at approximately 11:00 p.m., Rebecca Fox was sitting in her car, with her Husband Salim Halabi in the passenger seat next to her, on Lancaster Boulevard, waiting for their friend Suzann Reina. Fox had her window slightly down. A young man who appeared to be about 13 years old approached Fox and asked if he could use her cell phone to call his grandmother. A second young man was with the youth, but he hung back and did not approach the car. Fox was wary of the young man and initially said no, but then she offered to make the call on speaker phone and hold the phone out for him to speak with his grandmother. The young man gave her a number to call.

Reina arrived and observed a young man talking to Fox and another young man standing behind him. She was

---

[3] The facts are as presented by the prosecution. Joseph did not present evidence in his defense.

3

suspicious of the young man speaking to Fox, so she yelled to Fox to put her phone away and roll up her window. As this was occurring, Reina noticed a Chrysler 300 in the area driving slowly with its lights off. She could not see the driver.

Fox held her phone in her right hand, while the young man remained outside her car on the left side, dialed the number he had given her, and put the call on speaker so he could hear. A young girl, who did not sound like a grandmother, answered the phone call. The young man stuck his head inside Fox's car and tried to take the phone off the speaker. "That wasn't okay" with Fox, so she "held on to [her] phone tighter and moved away from him." Then the young man "reached in with his hands and grabbed [Fox's] phone out of [her] hands." "It was a struggle but he did [take the phone from her]." The young man ran away with her cell phone. Halabi got out of the car and chased him. Reina saw the second young man get into the Chrysler as the first young man ran away.

Richard Cardenas was driving with his cousin and his friend when Halabi and the young man ran in front of his car. As he passed Cardenas, Halabi yelled that the young man had his phone. Cardenas indicated to Reina that he understood what was happening and followed the Chrysler. Reina also pursued the Chrysler.

Cardenas turned a corner and saw the youth and Halabi on the ground. Two people got out of the Chrysler, which was parked about 10 or 12 feet away. One of them

4

kicked Halabi in the stomach. Cardenas and his friends got out of their car to help Halabi. The young men fighting Halabi got back in the Chrysler and drove away.

Reina reached Halabi just after Cardenas did. She also saw the Chrysler parked nearby. The doors were open and the only person in the car was the driver. The three passengers were beating Halabi. They were all male and looked like they were less than 25 years old. She heard the driver, who "definitely" had "an adult voice" say, "Get in the car, get in the car." The young men got back in the car and he drove them away.

Reina attempted to follow the Chrysler to get its license plate number. The Chrysler was driving fast, but she managed to get part of the number—7TT. She returned to Fox and Halabi. Halabi's glasses were missing and his face was covered in blood, but he had gotten Fox's cell phone back.

Cardenas also followed the Chrysler in an attempt to get its license plate number. He followed it for several blocks and went around a park. He never saw the vehicle stop and did not see the driver attempting to leave the vehicle. He lost the Chrysler when it drove through a red light.

Deputy Sheriff Kurt Wurzer responded to the scene. As he was interviewing Fox, Halabi, and Cardenas, the deputy received a report that a stolen light green Chrysler 300 registered to Joseph had been found nearby with a key

5

in the ignition.  The Chrysler was found close to the robbery scene.

Deputy Wurzer spoke with Joseph at his residence a few hours after the robbery.  Joseph said his car was stolen during the day when he was at the Antelope Valley Fair. Deputy Wurzer asked Joseph why he waited approximately three hours to report the car stolen.  Joseph said he was waiting for a ride back to his house, and had lost his wallet and keys.  Deputy Wurzer completed a CHP-180 form reporting the theft of the vehicle.  The deputy testified that "CHP-180 is a standardized form all law enforcement in California use for either a stolen vehicle or if we have to tow a vehicle or we recover a vehicle . . . ."  The form states on its face that it is "FURNISHED TO ALL PEACE OFFICERS BY CALIFORNIA HIGHWAY PATROL."  The deputy confirmed that "CHP-180 [is] a document that the registered owner has to sign.  Joseph signed below the section of the form that stated, "I certify or declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

Detective Daniel Ament of the Lancaster Sheriff's Department's Robbery Suppression team investigated the robberies.

Officers recovered Taco Bell receipts, showing two drive-through purchases made between 10:00 and 11:00 p.m. on the night of the robberies, from the center console of Joseph's Chrysler.

6

Surveillance video showed Joseph driving through the Taco Bell drive-through at 10:11 p.m. alone in his Chrysler. Joseph bought a burrito and sat in his car for several minutes. Video depicted Joseph getting out of his car and talking to several young men. The young men got into Joseph's car. Joseph went through the drive-through a second time at 10:48 p.m. and purchased six burritos.

Other surveillance footage showed Joseph's Chrysler parked in a nearby lot with the passenger door open, as Halabi was being beaten by the young men.

The location where the assault took place and the area where Joseph's car was recovered were each approximately 500 feet from Joseph's residence.

Detective Ament interviewed Joseph on August 30, 2016. Joseph initially said he got drunk at the fair and then could not find his car when he went back to the parking lot around 9:00 p.m.

When he was told about the surveillance video, Joseph said he first came in contact with the four young men at Taco Bell. They took his phone, wallet, and keys. One of them pulled a knife on him and forced him to drive them around. They told him to pull over. The one with the knife stayed in the car while the others got out. Joseph did not know the young men were going to commit robbery. He did not see where the two of them went when they got out of the car. They got back in the car and forced him to drive away. They made him pick up the men running outside the car. He did not know what they had done until they told him his car

7

was used in a robbery.  After the robbery, they made him drive around the corner.  The one with the knife told him to "get the fuck out of the car."  He went straight home and never saw them again.

Joseph denied robbing anyone.  He explained that he told the police his car was stolen because he was scared and embarrassed.  He did not want any trouble with the young men.

## DISCUSSION

### *Evidence of Force*

Joseph argues that there is insufficient evidence to support his robbery conviction in count 1 because the prosecution failed to demonstrate he used force greater than the force required to take Fox's cell phone from her.  We conclude that substantial evidence supports the jury's finding that the cell phone was taken by means of force or fear.

In determining whether sufficient evidence supports a conviction, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant

guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  . . .  'We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]"  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The "testimony of a single witness is sufficient to support a conviction" unless it is "physically impossible or inherently improbable."  (*People v. Young* (2005) 34 Cal.4th 1149, 1181; see Evid. Code, § 411 ["Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact"].)

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his [or her] person or immediate presence, and against his [or her] will, accomplished by means of force or fear."  ""The terms 'force' and 'fear' as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors.'" (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1708, quoting *People v. Anderson* (1966) 64 Cal.2d 633, 640.)  In terms of the amount of force required to elevate a taking to a robbery, 'something more is required than just that quantum of force

9

which is necessary to accomplish the mere seizing of the property.' (*People v. Morales* (1975) 49 Cal.App.3d 134, 139 (*Morales*).) But the force need not be great: "'[a]ll the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance . . . .'"" (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1259 (*Burns*), quoting *People v. Clayton* (1928) 89 Cal.App. 405, 411.)" (*People v. Lopez* (2017) 8 Cal.App.5th 1230, 1235 (*Lopez*).) "[W]here a person wrests away personal property from another person, who resists the effort to do so, the crime is robbery, not merely theft." (*Burns*, *supra*, at p. 1257; see also *Lopez*, *supra*, 8 Cal.App.5th at p. 1235.)

In this case, Fox testified that she was holding the phone in her right hand, away from where the young man was, outside the car on her left side. When the young man initially put his head in the car and tried to take the phone off speaker, Fox "held [her] phone tighter and moved away from him." He reached "in with his hands" and, although he did ultimately take the phone from her, "it was a struggle." From this testimony, the jury could reasonably conclude that Fox resisted and that the young man reached across her body, using both hands, to take the phone despite Fox's tightened grip, and succeeded only after a struggle. This evidence supports that the young man necessarily had to apply "[more] than just that quantum of force . . . necessary to accomplish the mere seizing of the property." (*Morales*, *supra*, 49 Cal.App.3d at p. 139.) Substantial evidence supports the robbery conviction in count 1.

10

*Perjury Conviction*

In his opening brief, Joseph contended that he was incorrectly charged with perjury under section 118, subdivision (a), a felony, when he should have been charged with falsely reporting a crime to police under section 148.5, subdivision (a), a misdemeanor, relying in part on the rule of statutory construction articulated in *In re Williamson* (1954) 43 Cal.2d 651. Following our initial review of the record, we asked the parties to brief the issues of: (1) whether Vehicle Code section 10501, subdivision (a), preempts section 148.5, subdivision (a), or section 118, subdivision (a), and (2) the impact, if any, of the recent Court of Appeal decision in *Sun*, *supra*, Cal.App.5th 946, with respect to this issue. Joseph now contends that Vehicle Code section 10501, subdivision (a) preempts section 118, subdivision (a). The Attorney General argues section 118, subdivision (a) applies.

We hold that Vehicle Code section 10501, subdivision (a), preempts section 118, subdivision (a), and reverse the conviction.

### **Proceedings**

Joseph was charged in count 3 as follows: "On or about August 29, 2016, in the County of Los Angeles, the crime of PERJURY BY DECLARATION, in violation of PENAL CODE SECTION 118(a), a Felony, was committed by

11

MICHAEL JEROME JOSEPH, who did unlawfully, under penalty of perjury, declare as true, that which was known to be false, to wit:  CHP 180 STOLEN VEHICLE REPORT." The jury was instructed in pertinent part:  "The People allege that the defendant made the following statement[s]: That his car was stolen on 8/28/16."  The jury convicted Joseph of perjury by declaration pursuant to section 118, subdivision (a).

### Relevant Statutes

As pertinent here, section 118, subdivision (a), under which Joseph was charged and convicted, provides that: "Every person who . . . declares . . . under penalty of perjury in any of the cases in which . . . declarations . . . [are] permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury."  "A 'declaration' is an unsworn written statement certified to be true under penalty of perjury.  (Code Civ. Proc., § 2015.5.)" (*People v. Griffini* (1998) 65 Cal.App.4th 581, 586.)

Section 148.5, subdivision (a), the statute which Joseph argued preempted section 118, subdivision (a) in his opening brief, makes it a misdemeanor to "report[] to any peace officer . . . that a felony or misdemeanor has been committed, knowing the report to be false . . . ."

Vehicle Code section 10501, subdivision (a), which we asked the parties to discuss in their supplemental briefing,

provides that "[i]t is unlawful for any person to make or file a false or fraudulent report of theft of a vehicle required to be registered under this code with any law enforcement agency with intent to deceive." (Veh. Code, § 10501, subd. (a).) A first conviction for violating section 10501, subdivision (a), is a misdemeanor. (*People v. Murphy* (2011) 52 Cal.4th 81, 85 (*Murphy*).)

### The *Williamson* Rule

"Under the *Williamson* rule, if a general statute includes the same conduct as a special statute,[4] the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute. In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute. (*Ibid.*) 'The rule is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict.' (*People v. Walker* (2002) 29 Cal.4th 577, 586.) 'The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in

---

4 The case law uses the terms "specific" and "special" statute interchangeably, as do we.

13

most instances, an overlap of provisions is determinative of the issue of legislative intent and "requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision . . . ." (*People v. Gilbert* [(1969)] 1 Cal.3d [475,] 481.)' (*People v. Jenkins* (1980) 28 Cal.3d 494, 505–506 (*Jenkins*), fn. omitted.)" (*Murphy, supra*, 52 Cal.4th at p. 86.)

"Absent some indication of legislative intent to the contrary, the *Williamson* rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.' (*People v. Watson* (1981) 30 Cal.3d 290, 295–296.) In its clearest application, the rule is triggered when a violation of a provision of the special statute would inevitably constitute a violation of the general statute . . . . [¶] On the other hand, if the more general statute contains an element that is not contained in the special statute and that element would not commonly occur in the context of a violation of the special statute, we do not assume that the Legislature intended to preclude prosecution under the general statute. In such situations, because the general statute contemplates more culpable conduct, it is reasonable to infer that the Legislature intended to punish such conduct more severely." (*Murphy, supra*, 52 Cal.4th at pp. 86–87.)

14

"[T]hat the general statute contains an element not within the special statute does not necessarily mean that the *Williamson* rule does not apply. 'It is not correct to assume that the [*Williamson*] rule is inapplicable whenever the general statute contains an element not found within the four corners of the "special" law. Rather, the courts must consider the *context* in which the statutes are placed. If it appears from the entire context that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute.' (*Jenkins*, *supra*, 28 Cal.3d at p. 502.)" (*Murphy*, *supra*, 52 Cal.4th at p. 87.)

### Cases Applying the *Williamson* Rule

*People v. Jenkins*

In *Jenkins*, *supra*, 28 Cal.3d 494, the Supreme Court addressed the issue of whether the defendant could be prosecuted under both Welfare and Institutions Code section 11483 for fraudulently obtaining aid to families with dependent children and section 118 for perjury. In that case, the general provisions providing for public assistance included Welfare and Institutions Code section 11054, which required an affirmation of eligibility under penalty of perjury

15

before a person could receive aid.[5]  (*Jenkins*, *supra*, at p. 499.)

The Court of Appeal had compared the general and special statutes, determined that not all elements of the general statute were present in the special statute, and concluded that the *Williamson* rule did not apply.  The Supreme Court reversed, holding that this was not the end of the analysis:  "[T]he *Williamson* rule is applicable when each element of the 'general' statute corresponds to an element on the face of the 'specific' statute.  However, the converse does not necessarily follow.  It is not correct to assume that the rule is inapplicable whenever the general statute contains an element not found within the four corners of the 'special' law.  Rather, the courts must consider the context in which the statutes are placed.  If it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute."  (*Jenkins*, *supra*, 28 Cal.3d at p. 502.)

---

[5] Under Welfare and Institutions Code section 11054, any person who "signs 'a statement containing such declaration' and willfully and knowingly with intent to deceive states as true any material matter which he knows to be false, . . . is 'subject to the penalties prescribed for perjury in the Penal Code.'  ([Welf. & Inst. Code, § 11054].)" (*Jenkins*, *supra*, 28 Cal.3d at p. 499.)

16

The Supreme Court next considered the context in which the statutes were placed. (*Jenkins*, *supra*, 28 Cal.3d at pp. 502–504.) It determined that because filing for benefits would always require an affirmation of eligibility under penalty of perjury, both statutes would always apply to the conduct at issue. Normally, this would resolve the issue and result in the application of the special statute only. (*Id.* at p. 505.) In the case of Welfare and Institutions Code section 11483, however, the Legislature had clearly stated the opposite intent, by requiring that eligibility be certified under penalty of perjury through Welfare and Institutions Code section 11054. The clear expression of Legislative intent trumped the *Williamson* analysis. The court held that the defendant could be prosecuted under the general perjury statute. (*Id.* at pp. 505–509.)

### *People v. Murphy*

In *Murphy*, *supra*, 52 Cal.4th 81, the defendant submitted a false report that her vehicle had been stolen to a deputy sheriff, using the same form at issue here—CHP-180. (*Id.* at p. 85.) The Supreme Court reversed Murphy's felony conviction under section 115, subdivision (a), a general statute governing the offering of a false instrument for filing in a public office, because it determined that the Legislature intended that her conduct be prosecuted under Vehicle Code section 10501, subdivision (a), which "specifically and narrowly addresse[d] [her] conduct of filing a false vehicle

17

theft report." (*Id.* at pp. 86, 94–95.) Applying the *Williamson* rule, the court concluded that section 115 was the more general statute "because it applies to a broader range of documents that may be filed in any public office." (*Id.* at p. 88.) The court determined that each element of Vehicle Code section 10501 had a counterpart in section 115. (*Id.* at pp. 88–89.) The main issue in contention was whether a violation of section 10501 necessarily or commonly required filing an "instrument." (*Id.* at p. 89.)

The People first argued that because Vehicle Code section 10501 could be violated in two ways—by orally "making" a report or "filing" a written report—and that only one means of violating the statute was prohibited by section 115—offering an "instrument," a type of written document—the *Williamson* rule did not apply. (*Murphy*, *supra*, 52 Cal.4th at p. 89.) The *Murphy* court rejected this argument, agreeing with the defendant that when a special statute may be violated in two ways, the analysis focuses solely on the way in which the defendant violated the statute. (*Id.* at pp. 89–91.)

The People also asserted that even if the court's analysis focused on false written reports, this type of conduct would not necessarily or commonly violate section 115 because although the report the defendant filed utilizing CHP-180 qualified as an instrument, not all written vehicle theft reports would constitute "instruments" within the meaning of section 115. (*Murphy*, *supra*, 52 Cal.4th at pp. 91–92.) The *Murphy* court found it unnecessary to define

18

the term "instrument" because "even if a false vehicle theft report may on occasion be filed in other, less formal formats, it seems safe to assume that the filing of CHP form No. 180 or a comparable form is one of the most common means of violating Vehicle Code section 10501." (*Id.* at p. 94.) Accordingly, filing a false vehicle theft report in violation of Vehicle Code section 10501 would commonly result in a violation of section 115, such that Vehicle Code section 10501 was the applicable statute. (*Ibid.*)

In so holding, the court specifically declined to address the People's argument "that because [the] defendant's conduct in signing the report under penalty of perjury makes her crime more egregious than that of a person who submits a false report without a signature under penalty of perjury, the greater punishment is justified," which raised "the entirely different issue of whether the filing of a false vehicle theft report could be the basis of a prosecution under Penal Code section 118, the statute that specifically addresses perjury, if the elements of that offense were established. (Cf. *Jenkins, supra*, 28 Cal.3d 494.)" (*Murphy, supra*, at p. 92, fn. 1.)

### *People v. Sun*

In *Sun, supra*, 29 Cal.App.5th, the defendant pleaded guilty to two counts of assault with a deadly weapon under section 245, subdivision (a), and six counts for discharging a laser into the cockpit of an occupied aircraft (§ 247.5) based

19

on the same conduct. (*Id.* at pp. 949–950.) As part of the plea agreement, he waived his right to appeal all issues, with the exception of the issue of whether the *Williamson* rule prohibited his convictions for assault with a deadly weapon. (*Ibid.*) On appeal, the defendant argued that prosecution for the general offense of assault with a deadly weapon (§ 245) was precluded by the specific statutes addressing unlawful use of a laser (§ 247.5).[6] The Court of Appeal agreed. (*Sun, supra,* at p. 950.)

The court determined that the statutes at issue in *Sun* contained disparate elements. Assault with a deadly weapon required "probability of injury to another," which section 247.5 did not. As a result, the first test of the *Williamson* analysis was not met. (*Sun, supra,* 29 Cal.App.5th at p. 951.) Looking at the defendant's specific conduct however, it was clear that the second test would apply: "The record shows [the defendant] violated section 247.5 by discharging a laser into the cockpit of an airborne helicopter in the middle of the night. Due to the obvious and foreseeable danger of such conduct, it would commonly constitute an assault with a deadly weapon within the meaning of section 245. Therefore, [the defendant] should not have been

---

[6] The defendant additionally alleged that sections 417.25 and 417.26 preempted prosecution for his conduct under section 245, but because the *Sun* court determined that his conviction must be reversed because section 247.5 preempted section 245, it did not address the applicability of those sections. (*Sun, supra,* 29 Cal.App.5th at p. 953, fn. 3.)

prosecuted under that section." (*Id*. at p. 952.) The Court of Appeal reversed the defendant's two convictions for assault with a deadly weapon. (*Id*. at p. 953.)

### Analysis

We begin with the issue of whether Vehicle Code section 10501, which "specifically and narrowly addresses [Joseph's] conduct of filing a false vehicle theft report," preempts section 118. (*Murphy*, *supra*, 52 Cal.4th at p. 85.) Following the *Williamson* analysis, we first determine whether the "general" perjury statute contains elements that the "specific" false vehicle theft report statute does not. In this respect our case is similar to *Jenkins*, in that "the assertedly 'general' crime of perjury requires as an element of the offense that a false statement be made under oath or affirmation whereas the crime of [falsely reporting vehicle theft] applies on its face to any false statement [that a vehicle has been stolen]." (*Jenkins*, *supra*, 28 Cal.3d at p. 503 [comparing section 118 to Welfare and Institutions Code section 11483]; see also *Sun*, *supra*, 29 Cal.App.5th at p. 951 [statutes contained disparate elements such that each could be violated without violating the other].) Having determined that the elements of the offenses differ, we next look to the context surrounding the statutes to determine the true extent to which they overlap, and thereby discern the Legislature's intent. (See *Jenkins*, *supra*, at p. 503.)

We first focus on the way in which Joseph violated the statute—filing a false stolen vehicle report—to determine whether that specific conduct would "'necessarily or commonly result in a violation of the general statute.' [Citation.]" (*Murphy*, *supra*, 52 Cal.4th at p. 86.) Here, the CHP-180 form states that it is furnished to all peace officers. Additionally, Deputy Wurzer testified that it is the standard form used when a vehicle is stolen and that the registered owner is required to sign the form. Neither party has contested that CHP-180 is the standard form used for reporting a vehicle stolen. Under the circumstances, we agree with the *Murphy* court it appears "the filing of CHP form No. 180 or a comparable form is one of the most common means of violating Vehicle Code section 10501." (*Id.* at p. 94.) It follows that filing a false vehicle theft report in violation of Vehicle Code section 10501 "would commonly result" in a violation of section 118. (*Ibid.* [holding that filing a false vehicle theft report using CHP-180 or similar written form will commonly constitute forgery]; *Sun*, *supra*, 29 Cal.App.5th at p. 953 [holding that discharging a laser into the cockpit of an airborne helicopter at night will commonly constitute assault with a deadly weapon].)

Finally, we note that there is no provision in the Vehicle Code requiring that a stolen vehicle report be filed under penalty of perjury, and no other indication that the Legislature intended to allow prosecution under section 118 as well as Vehicle Code section 10501, as was the case in *Jenkins*. We therefore conclude that Vehicle Code section

22

10501 preempts section 118, and reverse Joseph's conviction in count 3.[7]

## DISPOSITION

Joseph's conviction for perjury (§ 118, subd. (a)) in count 3 is reversed.  In all other respects, the judgment is affirmed.


MOOR, J.


I concur:


KIM, J.

---

[7] Because Joseph's conviction must be reversed, we need not reach the issue of whether his prosecution under Penal Code section 118 is also precluded by section 148.5. (See *Sun, supra,* 29 Cal.App.5th at p. 953, fn. 3; *Murphy, supra,* 52 Cal.4th at p. 95, fn. 4.)

The People v. Michael Joseph
B285062


BAKER, Acting P. J., Concurring



I concur in the majority's analysis of defendant Michael Joseph's (defendant's) claim that there was insufficient evidence to support his conviction for robbery. I write separately to outline why I agree the other claim defendant raises—that the rule espoused in *In re Williamson* (1954) 43 Cal.2d 651 (*Williamson*) should have barred his prosecution for felony perjury under Penal Code section 118—must be rejected.

As the majority correctly explains, the *Williamson* rule is a rule of statutory interpretation. (*People v. Walker* (2002) 29 Cal.4th 577, 586 ["The rule is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict"].) In theory, the rule's counsel is straightforward and sensible: "[I]f a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute." (*People v. Murphy* (2011) 52 Cal.4th 81, 86 (*Murphy*).) As the reasoning goes, "'[t]he fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature

intended the specific provision alone to apply.'" (*Ibid*.) As I will explain, however, things seem to get more complicated in practice.

Resolving an issue the *Murphy* Court expressly declined to reach (*Murphy, supra*, 52 Cal.4th at p. 92, fn. 1), today's opinion holds defendant's endorsement of a CHP-180 form to report his vehicle stolen cannot form the basis of a prosecution under the general perjury statute because the Legislature has enacted a special misdemeanor statute (Veh. Code, § 10501) that punishes false vehicle theft reporting. The majority so holds not because the elements of Penal Code section 118 perjury correspond to the elements of Vehicle Code section 10501—it is undisputed they do not— but on the theory that a violation of Vehicle Code section 10501 will commonly result in a violation of Penal Code section 118 because the CHP-180 form includes a penalty-of-perjury advisement and CHP-180 forms are commonly used to report vehicles stolen. (See generally *People v. Jenkins* (1980) 28 Cal.3d 494, 502 [*Williamson* rule can apply for either of two reasons: (1) because each element of a general statute corresponds to an element on the face of a more specific statute, or (2) because "it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute"].)

That conclusion follows directly from the rationale in *Murphy*. In that case, our Supreme Court believed "it seem[ed] safe to assume" that completion and endorsement

2

of CHP-180 forms "is one of the most common means of violating Vehicle Code section 10501." (*Murphy*, *supra*, 52 Cal.4th at p. 94.) The *Murphy* Court conceded the record in that case did not reveal how frequently the form was used, but there was at least testimony from the officer who took the stolen vehicle report in that case "that he would fill out such a form whenever someone reported a stolen vehicle." (*Ibid.*) As outlined by the majority, we have the equivalent minimal testimony in this case.

Aspects of the analysis in *Murphy* do, however, provoke further thought. As applied in *Murphy*, the *Williamson* rule, which is a maxim of sorts for determining legislative intent, can turn not just on logical inferences or legal requirements but on real-world practical facts. That is, the *Murphy* Court believed it could infer filing of a CHP-180 form is one of the most common means of violating Vehicle Code section 10501 (an empirical fact, and one that is subject to change over time) and determined, "[c]onsequently," a violation of the specific statute, Vehicle Code section 10501, would commonly result in a violation of the general statue, Penal Code section 118. (*Murphy*, *supra*, 52 Cal.4th at p. 94.) This determination then led to the further inference that "under the *Williamson* rule, . . . the Legislature, in specifying that such conduct constitutes a misdemeanor, intended to create an exception to the felony punishment specified in the more general statute." (*Ibid.*)

When a "commonly result[s]" analysis under the *Williamson* rule depends on a dynamic, factual premise (how

3

often it is stolen vehicle reports are made via a CHP-180 form, use of which does not appear to be compelled by State law or rule), it would seem a further showing must be made to draw the legislative intent inference at the heart of the rule. That is, a defendant must show not only what the common practice is, but that the common practice existed at the time the relevant special statute was enacted (or perhaps substantively amended). When the practice at issue is not a fact in common knowledge (and I would argue use of CHP-180 forms is not), determining the prevalence of the practice at the time the Legislature acted, and the Legislature's awareness of the practice, provide the key indicia of the Legislature's intent.

That is not how *Murphy* applied the *Williamson* rule, however, and I believe *Murphy*'s application is controlling. I therefore concur in the majority's disposition of defendant's appeal.

BAKER, Acting P. J.

4