Filed 6/5/25  P. v. Lawson CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>DWIGHT LAWSON,<br><br>　　　Defendant and Appellant. | B337009<br><br>(Los Angeles County<br>Super. Ct. No.<br>MA083509 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Brian C. Yep, Judge.  Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General for Plaintiff and Respondent.

————————————

The jury found Dwight Lawson guilty of attempted murder (Pen. Code,[1] §§ 187, subd. (a) & 664, count 1) and felon in possession of a firearm (§ 29800, subd. (a), count 2).  In count 1, the jury found true the allegations that Lawson personally used a firearm within the meaning of section 12022.5, subdivision (a), and personally inflicted great bodily harm within the meaning of section 12022.7, subdivision (a).  The jury also found true aggravated circumstances alleged under California Rules of Court, rules 4.421(a)(1), (a)(2), (a)(3) and (b)(1) in count 1.  The jury found not true the allegation that the attempted murder was willful, deliberate, and premeditated.  As to both counts, Lawson admitted that he suffered a prior strike conviction under the Three Strikes law.  (§§ 667, subds. (b)–(i) & 1170.12, subds. (a)–(d).)  The trial court sentenced Lawson to 28 years 4 months in prison.

On appeal, Lawson contends that there was insufficient evidence to support the jury's finding that he intended to kill the victim, and that the trial court erred by refusing to instruct the jury on attempted voluntary manslaughter and heat of passion under CALCRIM No. 603.

We affirm the judgment.

---

[1] All further statutory references are to the Penal Code.

# FACTS

On July 3, 2022, Sean Wallace went to Big Shotz Bar and Grill (Big Shotz) in Lancaster with a female friend.[2] Wallace and his friend were only in the bar briefly; they were not permitted to remain inside the bar because of the friend's attire. The friend argued with the security guard because she wanted to go back inside the bar. Wallace was trying to get her to leave. Lawson, who was also outside the entrance to the bar, appeared to be arguing with another person. Lawson and Wallace's friend began arguing. Lawson's demeanor was very aggressive—he "got in [Wallace's friend's] face[,]" and looked as if he might hit her. Wallace stepped between Lawson and his friend and pushed Lawson away from her. Wallace told Lawson to stay out of his friend's face. The men separated and looked at each other. Lawson yelled, "Blood, I am about to shoot these mother fuckers up." Lawson started moving toward his car and Wallace ran, believing that Lawson intended to retrieve a gun. Wallace saw Lawson open the trunk of his car and pull out a gun. As Wallace was running away he heard about four shots fired. A bullet hit Wallace in the leg. He limped into the bar and told everyone that he had been shot. Some people lowered him to the floor and applied pressure until an ambulance arrived. Wallace was transported to a hospital where he was treated for the gunshot wound and held for several hours.

---

[2] At trial, Wallace testified with the aid of an assisted listening device and had a sign language interpreter on standby. Wallace suffered from hearing impairment, but was not deaf.

Joy Tucker was also at Big Shotz on July 3, 2022.  She had been at the bar for a while when she first saw Lawson.  Lawson had a beer in his hand and he was arguing with one of the staff.  The argument did not appear to be serious—Lawson was laughing and smiling.  Tucker stopped watching the argument and ordered food for takeout.

Later, Tucker left the bar and was getting into the driver's seat of her car when she saw Lawson pacing back and forth "bantering off to anyone who walked by."  She was parked close to the entrance of the bar and could hear Lawson "cussing and fussing about any and everything."  He looked "really intoxicated or high."  He appeared to Tucker "like he was really trying to get someone to just bite to his antics, to him just being outside the building and just upset, just mad."  Lawson was trying to get back into the bar, but the staff turned him away.  There was a young woman who was arguing with the security guards because they would not let her into the bar, either.  Tucker saw Lawson approach the woman.  His behavior was "erratic."  He looked "like a crazed man."  Lawson started yelling at the woman, " 'I can show you all'—'I can show you'—'I will show you.' "  Tucker's friend, who was with her in the car, said, " 'He is really lit.' "  Tucker responded, " 'No.  That is a demon.  He is full on'—"

The argument continued and a security guard started to move Lawson and the woman away from the door so that customers could enter.  Tucker saw Wallace turn around and talk to Lawson about pushing the woman.  Wallace told Lawson to back off.  Another man standing close by told Lawson " 'Nobody's talking to you, man.' "  Lawson said:  "I got something for y'all.  I got—I'ma show you.  I got something."  Lawson then walked to a car parked across the street.  He opened the trunk and pulled out

a gun.  Lawson walked toward Tucker's car, firing the gun as he walked.  Tucker described Lawson as "just gone, not even present in the moment, and shooting.  There wasn't—it didn't appear like there was anyone directly he was trying to shoot at.  He was just shooting.  Walking down the street, heading toward my car shooting."  Lawson shot in the air and everyone who had been at the door outside of Big Shotz began to run toward the back.  As Lawson walked toward Tucker's car she tried to duck and pull her friend down out of harm's way, but she knew that it was futile—if Lawson decided to shoot into her car at that point the bullet would enter and ducking would not make a difference.  She sat up straight and froze, watching Lawson as he passed her car.  Tucker turned to see where Lawson was going.  Lawson continued to walk toward Big Shotz and fired the gun again.  Then Lawson turned and walked back in Tucker's direction.  Tucker drove away.

When Tucker was a few blocks away she pulled over, parked the car, and cried.  She was parked for about 15 to 20 minutes crying while her friend tried to calm her.  Once she was able to collect herself, she began driving to a Shell gas station several miles away from Big Shotz.  She was stopped at a traffic light near the gas station when a car pulled up next to her with the radio blaring.  Over the noise of the radio she could hear one of the occupants of the car screaming and cursing at the other person in the car.  Tucker and her friend looked over.  Lawson was driving the car idling next to them.  His window was part way down and Tucker could see him screaming at the person in the passenger seat.  Lawson looked back at Tucker and her friend.  He stuck his head out of the window and said, " 'Oh yeah.  You bitches are a part of this shit, too.' "  Tucker told her friend

that the guy in the car next to them was the shooter from Big Shotz.  Lawson was in a right-turn-only lane, so Tucker hesitated at the light to make sure Lawson turned right.  He did not.  She started to pull forward slowly and go straight.  Lawson also pulled forward.  Tucker drove faster and Lawson sped up.  Right after they cleared the intersection Lawson pulled in front of Tucker, turned his car to the left and blocked the street.  There was no way for Tucker to go around him.

Lawson exited his vehicle and walked toward Tucker's car with a half-full bottle of alcohol in his hand.  He crawled onto the hood of Tucker's car and screamed, "You bitches know who I am.  If you don't know, now you're going to learn today.  You want to fuck with this?"  Tucker and her friend shook their heads no.  Lawson got off the hood of the car and drove away.  Tucker drove to the Shell station.  She called a friend who worked at Big Shotz and asked if everything was okay.  Her friend said that a man had been shot in the leg and that the shooter had not been apprehended.  Tucker told her friend at the bar that Lawson had been on the hood of her car and told him which direction Lawson had driven.  Tucker's friend yelled for a police officer who was making a report of the incident at Big Shotz.  Tucker told the officer that she was too upset to drive but would wait at the Shell station to speak with him about the incident.

In total, Tucker saw or heard Lawson shoot into the air twice while standing next to his own car, fire three to four times as he approached Tucker's car, and fire another three shots as he walked toward Big Shotz.  She saw Lawson holding a beer in the bar and she saw him holding a half-full bottle of alcohol when he got on top of her car.  She did not see him holding any alcohol outside of Big Shotz during his encounter with Wallace.  Tucker

6

described Lawson as a demon because "if it's not even alcohol, drugs or mentally[. . . .]" "His actions. . . . He looked gone. Like, he—eyes glassed over almost. Like, he wasn't really present in the moment. Like somebody that's really—excuse me—fucked up."

Los Angeles County Sheriff's Department Detective James Phillips retrieved surveillance video of the incident from the area that was played for the jury. The video depicts Lawson engaging in a verbal altercation with Wallace's female friend. Lawson moves into very close physical proximity to the friend. Wallace steps between the two and pushes Lawson back, causing Lawson to step off of the curb that is directly behind him. Lawson can be seen pointing at Wallace and his friend repeatedly and shouting at them. Lawson turns and walks across the street to a car, opens the trunk, and retrieves a gun. Lawson then crosses the street and appears to fire one or more shots in the air as he walks. Lawson passes Tucker's car, which is parked at the corner directly in front of the Big Shotz entrance. At the same time, Wallace begins backing down the sidewalk away from Lawson and the Big Shotz entrance. No other people can be seen on the sidewalk with Wallace, and no other people were depicted on the sidewalk before Wallace began backing away. After Lawson is past Tucker's car he walks steadily in Wallace's direction, following Wallace and firing multiple shots seconds apart. Lawson then turns, runs back to the car across the street, and drives away.

Detective Phillips testified for the prosecution regarding marksmanship. Detective Phillips held the Sheriff's Department's qualification of expert marksman. The detective testified that hitting a mark requires concentration, knowledge,

7

and control.  If the target is 30 yards away, even greater skill and concentration are required.  The difficulty is further increased if the target is moving.  Hitting a target is most difficult if the shooter is also moving.  If a person is shooting wildly there is a risk that a nearby person or object will get hit.

## DISCUSSION

### A.     *Sufficiency of the Evidence of Intent to Kill*

Lawson first contends that the evidence was insufficient to support the jury's finding that he intended to kill Wallace and was not shooting randomly without intending to kill.  The contention is without merit.

### 1.     <u>Legal Principles</u>

When assessing the sufficiency of the evidence, we review the record " ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)  "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  We must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.)  "The same standard applies

when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) On appeal, we do not consider whether there is some evidence that could cause the trier of fact to reach a different conclusion, and we do not re-weigh the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' [Citation.]" (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) "Attempted murder requires express malice, that is, the assailant either desires the victim's death, or knows to a substantial certainty that the victim's death will occur." (*People v. Booker* (2011) 51 Cal.4th 141, 178.) "Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime." (*Canizales*, at p. 602.) If a jury concludes a defendant's use of a lethal weapon with lethal force was purposeful, an intent to kill can be inferred. (*People v. Smith* (2005) 37 Cal.4th 733, 741.)

2. <u>Analysis</u>

Lawson contends that the prosecution failed to offer substantial evidence that he shot at Wallace as opposed to simply randomly firing his gun at him. He argues that, at most, the evidence showed he fired in Wallace's direction with the intent to scare Wallace. Lawson further argues that Wallace initiated the

9

confrontation by pushing him, and that in Lawson's intoxicated condition, this caused him to act without intending to kill. Lawson asserts that "[i]t is reasonably likely" that he did not say "Blood, I am about to shoot these mother fuckers up" as Wallace testified—Wallace suffered from hearing impairment and Tucker did not testify that she heard Lawson make the statement.

Lawson's arguments do not concern whether substantial evidence was presented to support the jury's findings. His arguments go to the weight of the evidence, which is not a proper consideration for this court. Assessing credibility and weighing evidence are tasks that are entrusted to the jury. (*People v. Lindberg*, *supra*, 45 Cal.4th at p. 27.) It is irrelevant whether the jury could have reached a different conclusion; we review the record to determine whether there was substantial evidence to support the jury's verdict. (*Ibid*.)

Contrary to Lawson's assertion that he reacted to an unprovoked push from Wallace, the prosecution presented substantial, uncontroverted, evidence that Lawson, and not Wallace, initiated the confrontation. The video depicts Lawson approaching Wallace and his friend shortly after they exit the bar and starting an argument with Wallace's friend. Lawson moves aggressively close to Wallace's friend. When Wallace steps between them and pushes Lawson back, Lawson steps back off the curb, but he does not stumble or fall as a result of the push. Consistent with the video evidence, Tucker and Wallace both testified that Lawson was the aggressor. Tucker additionally testified that Lawson was acting aggressively before Wallace and his friend exited the bar. It appeared to Tucker that Lawson was attempting to start a fight.

10

The evidence also demonstrates that Lawson was agitated by his interaction with Wallace and Wallace's friend, which is probative of Lawson's intent. (*People v. Smith, supra*, 37 Cal.4th at p. 741 ["evidence of motive is often probative of intent to kill"].) Tucker testified that Lawson told Wallace and his friend that Lawson had something *for* them: "I got something for y'all. I got—I'ma show you. I got something." Lawson then immediately went to his car, retrieved the gun, and came back shooting. Wallace testified that Lawson yelled, "Blood, I am about to shoot these mother fuckers up." Although Wallace suffered from hearing impairment, he was not deaf. There was no evidence adduced at trial that he could not hear what Lawson yelled at him. Wallace's testimony is sufficient to support the finding that Lawson said that he was "about to shoot these mother fuckers up[,]" and that statement evinces that Lawson intended to kill Wallace. (See *People v. Joseph* (2019) 33 Cal.App.5th 943, 950 ["[t]he 'testimony of a single witness is sufficient to support a conviction' unless it is 'physically impossible or inherently improbable' "].)

Lawson argues that the absence of intent to kill is evidenced by the fact that he fired "warning shots" as he crossed the street. The video shows Lawson pointing directly at Wallace and his friend repeatedly while shouting and then walking directly across the street and retrieving a gun. Lawson does not fumble with his keys, stagger, or move haphazardly. Lawson fires in the air only until he passes Tucker's car.[3] As soon as he

---

[3] Lawson's later attack of Tucker and her friend suggest that he saw the women in Tucker's car and chose not to shoot directly at them as he followed Wallace.

11

passes Tucker's car, Lawson lowers his weapon to eye level and fires in Wallace's direction as he follows Wallace. Lawson takes several shots directly at Wallace, with pauses in between that suggest he is adjusting his aim. Lawson continues to move toward Wallace as Wallace flees, and he shoots directly at Wallace multiple times from a close distance, ultimately hitting Wallace in the leg.[4] Viewing Lawson's deliberate movements, the jury could reasonably infer intent to kill. Moreover, the witness testimony was consistent with the video regarding Lawson's actions. Tucker testified that she heard Lawson fire three shots after he passed her car and was walking toward Big Shotz, and Wallace testified that he heard approximately four shots fired as he was running away from Lawson. California courts have held that the " 'act of firing toward a victim at a close, but not point blank, range "in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill . . . ." [Citation.]' " (*People v. Smith*, *supra*, 37 Cal.4th at p. 741.) That Wallace " ' "may have escaped death because of [Lawson's] poor marksmanship [does not] necessarily establish a less culpable state of mind." [Citation.]' [Citation.]" (*Ibid*.) Detective Phillips testified that it takes skill and concentration for a shooter who is in motion to hit a moving target. The jury could reasonably infer from the fact that Lawson hit Wallace in the leg that Wallace was Lawson's mark and that Lawson intended to kill.

---

[4] Lawson's assertion that Wallace may not have been shot is unfounded. Wallace testified that he was shot in the leg. His testimony was uncontroverted and was sufficient to establish that fact. (*People v. Joseph*, *supra*, 33 Cal.App.5th at p. 950.)

Finally, as the trial court pointed out when discussing whether to give an instruction on voluntary intoxication, there was minimal evidence produced regarding intoxication.[5] Although Lawson can be seen drinking in the bar for a few minutes in one video, it is unclear how much alcohol he consumed. There is no evidence that Lawson consumed alcohol outside of Big Shotz before the shooting. Lawson's deliberate behavior in the video was inconsistent with intoxication. When Wallace pushed Lawson, Lawson did not lose his balance or fall, despite stepping off the curb behind him. Lawson walked directly to his car. He opened the trunk without fumbling the keys and retrieved his gun in seconds. Lawson then pursued Wallace and fired three to four shots directly at him, hitting Wallace in the leg with one of the shots. By observing his behavior in the video, the jury could infer that Lawson was not intoxicated, let alone intoxicated to the point where he could not form the intent to kill. The video and Tucker's testimony provided a sufficient basis for the jury to conclude that Lawson acted deliberately, with malice.

## B.    *Heat of Passion Instruction*

Lawson next contends that the trial court erred by refusing to instruct the jury on the lesser offense of attempted voluntary manslaughter based upon a heat of passion theory. This contention also lacks merit.

---

[5] The trial court ultimately decided to give the voluntary intoxication instruction, as the evidence, while minimal, was a sufficient basis to present the issue to the jury for consideration.

### 1.　　**Legal Principles**

" 'A trial court has a duty to instruct the jury "sua sponte on general principles which are closely and openly connected with the facts before the court." [Citation.]' . . ." (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824; see *People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)  This obligation includes the duty to give instructions on lesser included offenses, if there is substantial evidentiary support for them.  (*Breverman*, *supra*, at p. 160.)  We review de novo the claim that a trial court failed to properly instruct the jury on the applicable principles of law. (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.)

In determining whether substantial evidence exists to support an instruction, trial courts should not usurp the jury's function of evaluating the credibility of witnesses.  (*Breverman*, *supra*, 19 Cal.4th at p. 162.)  In the context of lesser included offenses, substantial evidence means " ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]" ' that the lesser offense, but not the greater, was committed. [Citations.]"  (*Ibid*.)  "Speculation is insufficient to require the giving of an instruction on a lesser included offense."  (*People v. Mendoza* (2000) 24 Cal.4th 130, 174.)

"Voluntary manslaughter is a lesser included offense of murder when the requisite mental element of malice is negated by a sudden quarrel or heat of passion, or by an unreasonable but good faith belief in the necessity of self-defense.  'Only these circumstances negate malice when a defendant intends to kill.' (*People v. Lee* (1999) 20 Cal.4th 47, 59.)  . . . To establish voluntary manslaughter under a heat of passion theory, both

14

provocation and heat of passion must be found. (*Id.* at p. 60.)" (*People v. Gutierrez* (2003) 112 Cal.App.4th 704, 708.)

" 'First, the provocation which incites the killer to act in the heat of passion case must be caused by the victim or reasonably believed by the accused to have been engaged in by the decedent. [Citations.]' " (*People v. Gutierrez, supra,* 112 Cal.App.4th at pp. 708–709.) "A defendant may not provoke a fight, become the aggressor, and, without first seeking to withdraw from the conflict, kill an adversary and expect to reduce the crime to manslaughter by merely asserting that it was accomplished upon a sudden quarrel or in the heat of passion. The claim of provocation cannot be based on events for which the defendant is culpably responsible. (*People v. Johnston* (2003) 113 Cal.App.4th 1299, 1312–1313; *People v. Hoover* (1930) 107 Cal.App. 635.)" (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 83.) " 'Second, . . . the provocation must be such as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection.' (*People v. Lujan* (2001) 92 Cal.App.4th 1389, 1411–1412.)" (*People v. Gutierrez, supra,* 112 Cal.App.4th at p. 709.)

### 2. <u>Proceedings</u>

In a hearing outside of the presence of the jury, defense counsel argued that the court had a duty to give CALCRIM No. 603 on the lesser included offense of attempted voluntary manslaughter/heat of passion. The prosecutor did not object to the court giving the instruction. The court asked defense counsel to prepare the instruction and said they would discuss whether it was appropriate to give at a later hearing. The court stated that it viewed the issue as one of whether there was sufficient

15

evidence to support giving the instruction, but that the court would review the relevant case law.

In a subsequent hearing outside the presence of the jury, the court informed the parties that it would not instruct on heat of passion/voluntary manslaughter because it found there was insufficient evidence that Lawson was sufficiently provoked to merit shooting the victim and insufficient evidence that Lawson did not have time to cool down. The court found: "The provocative conduct of the victim, which is the shove, was not sufficient provocation that it would cause an ordinary reasonable person of average disposition to go get a gun and shoot the victim." [¶] "In addition, the court finds there was sufficient time between the victim's shove and the defendant's shooting for a reasonable and ordinary person to have cooled down. For example, defendant walked to his car. And in doing so, he could have just drove the car away, which is what an ordinary or reasonable person with an average disposition would have done based on the court's finding and review of the evidence."

Defense counsel argued that the court was improperly deciding the issue for the jury. The court disagreed, stating that its decision was based on a lack of sufficient evidence to support those two elements. The court concluded, "I mean, is there a provocation here. And again, I went through. It was a shove. There's no question about that. But the victim is trying to get space and trying to protect his girlfriend at the same time. The shove is—it's not—it's insignificant—it's not insignificant, but it's certainly not enough to provoke a heat of passion where Mr. Lawson then goes and gets a gun and begins to shoot."

16

### 3.    Analysis

Lawson contends that there was substantial evidence to support instructing the jury on voluntary manslaughter/heat of passion under CALCRIM No. 603.  Lawson argues that the evidence Wallace shoved him is a sufficient basis for submitting the question of whether he was adequately provoked to the jury. Similarly, Lawson asserts the evidence that he had to cross the street to retrieve a firearm from his vehicle is substantial evidence from which a jury could conclude that he did not have an adequate time to "cool off" before he shot Wallace.  Lawson argues that the trial court usurped the jury's role by weighing the evidence rather than instructing the jury on the relevant law and permitting it to determine whether there was adequate provocation and/or a sufficient cooling off period.

We need not address either of Lawson's assertions, because we conclude that it would have been inappropriate to give CALCRIM No. 603 for another reason.  (*People v. Dawkins* (2014) 230 Cal.App.4th 991, 1004 [Court of Appeal may affirm the trial court's ruling on any basis apparent from the record].)  Although the trial court identified Wallace's shove as a potential, though insignificant, source of provocation, the uncontradicted evidence demonstrates that Lawson instigated the confrontation by picking a fight with Wallace's friend and approaching her in a menacing manner.  This, in turn, caused Wallace to intervene out of fear for his friend's safety.

At trial, Tucker testified that, prior to the shooting, Lawson was yelling and belligerent.  He was pacing back and forth "bantering off to anyone who walked by" and "cussing and fussing

17

about any and everything." Lawson looked "like he was really trying to get someone to just bite to his antics, to him just being outside the building and just upset, just mad." Tucker saw Lawson approach Wallace's female friend. Tucker described Lawson's behavior as "crazed" and "erratic". Wallace also testified that Lawson's demeanor was very aggressive when he was arguing with Wallace's female friend—Lawson "got in [Wallace's friend's] face[,]" and appeared as if he was going to hit her. To shield his friend from harm, Wallace stepped between Lawson and his friend and pushed Lawson away. The surveillance video of the incident corroborates the witnesses' testimony. Prior to the incident, Lawson can be seen approaching various people, following them and gesturing aggressively. He approaches Wallace and his friend right after they exit Hot Shotz, gets uncomfortably close to Wallace's friend's face, and engages her in an argument. It is only after Lawson initiates the conflict with Wallace's friend that Wallace steps in and physically moves him away. In short, Lawson "provoke[d] a fight, [became] the aggressor, and, without first seeking to withdraw from the conflict, [attempted to] kill [Wallace]." (*People v. Oropeza, supra,* 151 Cal.App.4th at p. 83.) Having instigated the confrontation that culminated in the shooting, Lawson cannot now claim that he was provoked by Wallace's reaction to his provocation. (*Ibid.*) The trial court did not err by refusing to instruct on voluntary manslaughter/heat of passion.

## DISPOSITION

We affirm the trial court's judgment.
NOT TO BE PUBLISHED.


                                        MOOR, J.

WE CONCUR:


        HOFFSTADT, P. J.


        KIM (D.), J.

19