Filed 8/15/23  P. v. Cabrera CA2/8
Opinion following transfer from Supreme Court
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B314954 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA115599) |
| v. | |
| JOSE LUIS CABRERA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  James R. Dabney, Judge.  Affirmed.

Law Offices of James Koester and James Koester for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

In June 2022, we affirmed the denial of defendant and appellant Jose Luis Cabrera's motion to vacate a 1995 conviction pursuant to Penal Code section 1473.7, subdivision (a)(1). Defendant sought and was granted review by the Supreme Court. On January 26, 2023, the Supreme Court issued its decision in *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*) and transferred the case to us with directions to vacate our decision and reconsider the matter in light of *Espinoza*. The parties submitted supplemental briefing.

Having vacated our prior decision and reconsidered the issues presented in light of *Espinoza*, we again affirm the denial of defendant's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

We grant defendant's request for judicial notice of portions of the file pertaining to his 1995 conviction.

In 1995, defendant was charged with one count of committing a lewd act upon a child under the age of 14 in violation of Penal Code section 288, subdivision (a). According to the probation report, defendant's nine-year-old stepdaughter told her mother defendant had touched her inappropriately on numerous occasions, the first time when she was just seven. Her mother, who had two younger sons with defendant, called the police.

At a hearing on July 12, 1995, defendant was represented by deputy public defender Bruce Schweiger and assisted by a Spanish language interpreter. The prosecutor advised the court the parties had reached a negotiated disposition in the case in which defendant would plead guilty to the lewd conduct charge, serve one year in county jail, five years of formal probation,

register as a sex offender, receive counseling upon release and observe a stay away order in favor of the victim during the period of probation.

Before accepting defendant's plea, the court advised defendant of the legal consequences attendant to entering a plea of guilty to a serious felony, including the following: "If you are not a citizen of the United States, this guilty plea can result in your deportation, denial of citizenship, naturalization, amnesty, or reentry into this country." When the court asked defendant if he understood everything so far, he answered yes. Having heard the court's advisement regarding the immigration consequences, defendant did not ask any questions or seek clarification from the court or his counsel. The fact defendant was advised by the court of the immigration consequences of his plea was also confirmed in the minute order for that date.

The court continued with the plea colloquy, advising defendant of the specific trial rights he was giving up by pleading guilty and accepting defendant's oral waivers of each right on the record. The court then asked defense counsel, "Mr. Schweiger, have you discussed with your client his constitutional rights, the nature of the charge, and the consequences of the plea as well as any legal or factual defenses, and do you further believe he understands all of those matters?" Mr. Schweiger said yes.

The court asked defendant whether he understood everything his attorney and the court had explained to him, and defendant again answered yes. When the court asked defendant if he had any questions, defendant and his counsel conferred off the record. After conferring with counsel, defendant asked the court if it could make a recommendation to the sheriff's

3

department that he be placed on a work assignment in county jail. He had no further requests or questions.

The court found defendant's waivers to have been made voluntarily and knowingly, found a factual basis for the plea and accepted defendant's plea of guilty. Counsel concurred in the plea and stipulated to the factual basis for the plea.

In September 2001, defendant, who had completed his sentence and was out of custody, moved pursuant to Penal Code section 1203.4 for his conviction to be vacated and the charges dismissed. The court granted the motion. The expungement pursuant to section 1203.4 has no effect on federal immigration consequences. (See, e.g., *People v. Martinez* (2013) 57 Cal.4th 555, 560.)

In 2016, Assembly Bill 813 (2015–2016 Reg. Sess.) was passed, enacting Penal Code section 1473.7 which provides a procedural mechanism for individuals who are no longer in custody to move to vacate their prior convictions on certain enumerated grounds. (Stats. 2016, ch. 739, § 1.) The statute became effective January 1, 2017.

In September 2020, defendant filed his motion to vacate pursuant to Penal Code section 1473.7, subdivision (a)(1). In a supporting declaration, defendant said he was not advised about the immigration consequences of his plea. He said if he had known he would be subject to mandatory deportation, he would have asked his attorney to attempt to negotiate an immigration-neutral disposition. Defendant said his lawyer told him he could seek expungement after serving any punishment, and therefore he did not believe the conviction would "carry any long-lasting consequences." He said he came to the United States from Guatemala at the age of 24, no longer had any ties with

4

Guatemala, lived in the United States with his wife (whom he married in 2013) and five children and was their sole source of support. Defendant said he was currently facing removal proceedings as a result of the conviction and did not want to abandon his family. Other than attaching copies of his marriage certificate and his children's birth certificates, defendant did not present any other evidence in support of his motion.

The People filed opposition arguing that defendant was advised of the immigration consequences of his plea and had not satisfied the burden of proof to prevail on the statutory motion. The opposition included a copy of the reporter's transcript for the 1995 plea hearing at which the court advised defendant of the immigration consequences of his plea.

On July 19, 2021, the court held an evidentiary hearing on defendant's motion. Defendant testified, as did his public defender on the 1995 case, Mr. Schweiger. We provide a more detailed discussion of their testimony below.

After entertaining argument, the court took the matter under submission and later issued a written order denying defendant's motion. The court found defendant had failed to meet his burden on the motion and specifically stated it did not find defendant's "testimony regarding his lack of understanding of the court's advisements to be credible."

This appeal followed.

## DISCUSSION

### 1. Penal Code Section 1473.7

Defendant moved to vacate his conviction based solely on subdivision (a)(1) of Penal Code section 1473.7. Subdivision (a)(1) allows a defendant, who is no longer in custody, to move to vacate a conviction or sentence where "[t]he conviction or sentence is

5

legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

Penal Code section 1473.7 specifies the court "shall grant" a motion to vacate if the moving party establishes "by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (*Id.*, subd. (e)(1).) A defendant moving for relief under subdivision (a)(1) "shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (*Id.*, subd. (e)(1).)

Further, the statute provides "[t]here is a presumption of legal invalidity for the purposes of paragraph (1) of subdivision (a) if the moving party pleaded guilty or nolo contendere pursuant to a statute that provided that, upon completion of specific requirements, the arrest and conviction shall be deemed never to have occurred, where the moving party complied with these requirements, and where the disposition under the statute has been, or potentially could be, used as a basis for adverse immigration consequences." (Pen. Code, § 1473.7, subd. (e)(2).)

## 2. The Presumption of Invalidity Does Not Apply

Defendant contends subdivision (e)(2) of Penal Code section 1473.7 should be read broadly to include all plea convictions eligible for relief pursuant to section 1203.4. Since he obtained expungement of his conviction pursuant to

6

section 1203.4 after he completed his probationary term, he says the presumption of invalidity should therefore apply here. Defendant admits there is no case authority interpreting the presumption in this manner.

We are not persuaded by defendant's novel statutory interpretation argument. The language of Penal Code section 1473.7, subdivision (e)(2) is unambiguous. The presumption of invalidity pertains *only* to convictions for violating a statute that expressly contains language providing for expungement of the conviction after the completion of certain conditions. Defendant pled guilty to a violation of section 288, subdivision (a). There is no language in section 288 that states or suggests that a defendant may apply to expunge the conviction upon the successful completion of the sentence imposed.

We adhere to the well-established principle of statutory interpretation that where statutory language is not ambiguous, the plain meaning of the language governs. (*People v. Walker* (2002) 29 Cal.4th 577, 581.)

**2. Defendant Did Not Satisfy His Burden of Proof as Moving Party**

**a. Standard of review**

We independently review trial court rulings on motions brought pursuant to Penal Code section 1473.7. (*Espinoza, supra,* 14 Cal.5th at pp. 319–320; *People v. Vivar* (2021) 11 Cal.5th 510, 527–528 (*Vivar*).) While engaging in independent review, an appellate court nonetheless should give particular deference to factual findings based on the trial court's personal observations of witnesses but need not do so for trial court findings arising only from a cold record. (*Espinoza,* at p. 320; *Vivar,* at pp. 527–528, 534.)

### b.    The evidentiary hearing

Defendant was represented by counsel at the hearing on his motion and testified under oath with the assistance of a Spanish language interpreter.  Defense counsel did not ask questions of defendant on direct.  The parties agreed that defendant would submit on the declaration attached to his motion and that the prosecutor could proceed with cross-examination.

Defendant was born in Guatemala.  There was no testimony about how or when he arrived in the United States, but the declaration supporting his motion said he was 24 years old at the time.  Defendant said after he arrived in the United States as an undocumented person, he was assisted by a nonlawyer in obtaining a work permit and he renewed it annually.  He did not have permanent residency status.

Defendant admitted he pled guilty to a violation of Penal Code section 288 in 1995 and that the lewd conduct involved his minor stepdaughter.  He also acknowledged a copy of his signed, written statement he gave to police in which he admitted to inappropriately touching his stepdaughter between three and five times.  She was nine years old at the time.  However, defendant claimed to not recall talking to the police about it and that he did not recall doing what he had admitted back then.  Defendant said he did recall talking to a psychologist "inside jail" and admitting to the psychologist that he touched his stepdaughter inappropriately.

Defendant denied being told about the adverse immigration consequences of his plea.  "I was not told that if I pled guilty I would have immigration problems.  I was not told any of that." He said the court may have told him, but he was "very nervous"

and just wanted to get out of the courtroom and get the whole thing over with, and so he just answered yes to everything. He said he was never told pleading to the lewd conduct charge would result in mandatory deportation or make him ineligible to return to the United States or seek permanent residency at a later date.

Defendant also denied that his attorney, Mr. Schweiger, told him about any adverse immigration consequences. He said Mr. Schweiger only explained that he faced a lot of years in prison if he went to trial, and that the plea offer would allow him a short time in jail with five years of probation and the opportunity afterward to "have my record clean." He said he was happy about the offer because he "wanted to get out of that jail. . . . [¶] . . . [¶] . . . I didn't want to be there. I wanted to be with my family, my children."

The prosecutor asked what defendant understood Mr. Schweiger to mean by saying he could have a "clean record." Defendant said he knew the conviction "was a problem. And that's why I asked him afterwards [*sic*] I would be able to clean my record. The thing is, I don't—I don't know the law." When he was asked to clarify, defendant repeated he knew it was "[a] problem, yes. But not with immigration. I didn't know that." Defendant was asked again how the conviction was a problem. He answered only that, "[i]n the United States to violate, to do something which is not correct." Defendant was not asked to provide further clarification.

Shortly thereafter, defendant was asked whether, if he had been told his plea would result in deportation, he would have talked with his lawyer about it. Defendant said, "[i]f I had been paying attention, possibly. Yes." The prosecutor asked him if it was his testimony that he was not paying attention to what the

court was saying to him during the plea hearing. Defendant responded by saying he did not understand anything that was going on. "I was not in my right mind . . . . I was very nervous. I was crying. [¶] I wanted to get out of there." Defendant said he was told he would lose at trial and faced as much as 20 years in prison if he did not plead guilty, so he pled guilty because he wanted to get out of there.

Mr. Schweiger, defendant's public defender in 1995, testified that in 1995 he had over 10 years of experience, having joined the public defender's office in 1984. Mr. Schweiger said the office had an in-house immigration specialist who trained him and the other lawyers on immigration issues and kept them current on immigration law. He did not have a specific recollection of defendant or his case given the lapse of time but he said his custom and practice was to discuss citizenship with every client and to explain possible immigration consequences to the charges they faced.

Mr. Schweiger testified that "in a case such as this" involving a sexual offense, he would "go a step further" and explain to the client "they have to expect to be deported." He said he would discuss the possibility of expunging the record, the possibility of additional charges being added, the potential sentences and trial risks, and he reiterated he would tell noncitizen clients "they had to expect to be deported."

### c. Analysis

*Espinoza* tells us that, in moving to vacate a conviction, a defendant must establish, by a preponderance of the evidence that "he did not meaningfully understand the immigration consequences of his plea [and that] misunderstanding constituted *prejudicial* error." (*Espinoza*, *supra*, 14 Cal.5th at p. 319, italics

added; see also Pen. Code, § 1473.7, subd. (a)(1) [movant must demonstrate "prejudicial error damaging [his] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence"].)

Defendant contends the court's advisement about immigration consequences was inadequate because it only told him he *may* be deported, not that it was mandatory due to the nature of the charge to which he was pleading. He argues the error was compounded by Mr. Schweiger's failure to properly advise him about the immigration consequences at all and, more particularly, his failure to explain that any later expungement would not be effective to prevent his deportation. The trial court did not find defendant's testimony on this point credible. The trial court was in the best position to assess defendant's credibility and its finding is entitled to deference. (*Espinoza, supra,* 14 Cal.5th at p. 320; *Vivar, supra*, 11 Cal.5th at pp. 527–528.)

Moreover, even assuming error in the advisements that resulted in defendant misunderstanding the full scope of immigration consequences, it is not enough to warrant relief. Defendant was required to demonstrate *prejudicial* error. (*Espinoza, supra*, 14 Cal.5th at p. 319; *Vivar, supra,* 11 Cal.5th at p. 528.)

On establishing prejudicial error, *Espinoza* said, "To determine whether there is a reasonable probability a defendant would have rejected a plea offer if he had understood its immigration consequences, courts must 'consider the totality of the circumstances.' [Citation.] 'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the

11

importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' [Citations.]  Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial.  [Citation.]  These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza*, *supra*, 14 Cal.5th at pp. 320–321.)

Espinoza also instructs that "[a] defendant must provide ' " ' "objective evidence" ' " ' to corroborate factual assertions. [Citation.]  Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza*, *supra,* 14 Cal.5th at p. 321.)

Defendant presented evidence he came to the United States in 1988 as a 24-year-old adult and worked here under a work visa.  Defendant has lived in the United States since that time and defendant said he maintained no "significant connections" to Guatemala.  He also stated he is the financial provider for his wife and five children but did not provide any information about his work history other than that he had been working fulltime at the time of his plea in 1995.

Other than these ties to the United States, defendant did not offer other evidence supporting a finding it was reasonably probable he would have rejected the prosecution's plea offer had he fully understood the adverse immigration consequences he

was facing or that he had any reason to believe there was a more favorable, immigration-neutral disposition to be negotiated.

*Espinoza* made clear that in establishing prejudice, the probability of a more favorable outcome was an important factor and that the "inquiry is informed by whether the defendant would have had reason 'to expect or hope' that a plea deal without immigration consequences 'would or could have been negotiated.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 324.) "Factors relevant to this inquiry include the defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's charging policies with respect to immigration consequences, and the existence of comparable offenses without immigration consequences." (*Id.* at p. 323.)

Defendant signed a statement admitting he inappropriately touched his nine-year-old stepdaughter on three to five separate occasions. He acknowledged that statement in his testimony at the hearing. There is no evidence suggesting the prosecution, in light of that evidence, was willing to offer defendant a more favorable plea that might have been immigration neutral. His counsel offers speculation that had he been fully apprised of the immigration consequences, he may have urged Mr. Schweiger to seek an alternative disposition, but counsel does not suggest the prosecution indicated any willingness to negotiate an immigration neutral plea. Speculation is not sufficient to satisfy his burden. (See, e.g., *People v. Tapia* (2018) 26 Cal.App.5th 942, 954 [a defendant's speculation another disposition could have been negotiated is not evidence].)

Further, defendant did not provide any testimony or other evidence he was willing to risk trial despite the evidence against

13

him.  When asked at the hearing whether he would have asked Mr. Schweiger additional questions if he had understood he faced deportation by pleading guilty, defendant said he "possibly" would have "[i]f [he] had been paying attention."  When asked to clarify this statement, defendant said he did not understand anything that was going on during the plea colloquy because he was nervous and just wanted to get out of there.

Defendant's statements during the plea colloquy and during his testimony at the motion hearing show that his primary focus in 1995 was getting out of jail and avoiding any time being incarcerated.  The transcript of the plea hearing shows defendant conferred off the record several times with Mr. Schweiger, but there is nothing indicating defendant had any questions about the immigration consequences of his plea. Defendant only asked the court to recommend a work assignment for him at the jail.  He affirmed several times that he understood what he was being told and did not have any questions. Defendant did not offer any evidence contemporaneous with the taking of his plea that would support his contention many years later that avoiding adverse immigration consequences was a paramount consideration in 1995.  (*Lee v. United States* (2017) 582 U.S. 357, 369 [in resolving a motion to withdraw a plea, judges should "look to contemporaneous evidence to substantiate a defendant's expressed preferences"].)

Considering the totality of circumstances, defendant failed to demonstrate that if he had been further advised about the immigration consequences of his plea, it was reasonably probable he would have rejected the prosecution's offer, or that he had reason to hope for or expect, given the evidence against him (including his admissions of guilt), a plea offer of an immigration

14

neutral disposition.  The motion to vacate was properly denied. We are not persuaded that remanding the case for further development of the record is warranted.

## DISPOSITION

The order denying defendant's motion to vacate pursuant to Penal Code section 1473.7 is affirmed.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.

15